LOUISVILLE & NASHVILLE RAILROAD COMPANY *v.*
STACKER.

(*Nashville.* February 9th, 1888.)

1. MASTER AND SERVANT. *Railroads. Negligence. Degree of care due to servant.*

A railway company that invites its employe on board its train to receive his wages, must exercise the same degree of care and diligence for his safety, while on or leaving the train, as if he were a passenger.

2. SAME. *Same. Contributory negligence. Alighting from train in motion. Charge of Court.*

Where such employe, on invitation express or implied of the company's servants in charge of the train, attempted to alight from it while moving slowly, and was thereby injured, he would not be guilty, although he knew himself to be feeble and infirm, of such contributory negligence as would, *per se*, defeat a recovery for such injury.

Case cited and approved: Railroad *v.* Connor, 15 Lea, 254.

Cited and distinguished: Railroad *v.* Massengill, 15 Lea, 328.

3. SAME. *Same. Same. Question for jury.*

In such case, it is the jury's province to determine, upon the evidence and a proper charge by the Court, whether the contributory negligence defeats the action entirely, or only mitigates the damages, and, if the latter, to what extent.

4. SAME. *Same. Same. Implied invitation to alight from moving train.*

Where a railway train is improperly set in motion before a person aboard, who is entitled to leave it at that place, has reasonable time to do so, and while he is in the act of leaving it, there is an implied invitation for him to alight from the moving train; and he could act upon that invitation without negligence, provided the speed of the train, his own weakness, or some other obvious danger did not render it imprudent for him to make the effort.

5. NEW TRIAL. *Admission of illegal evidence. Self-serving declarations.*

On the trial of an action for damages, brought by a widow against a railroad company for injuries causing her husband's death, there being real controversy as to whether the death was the result of natural causes or of defendant's act, it is error to admit, over defend-

Railroad Company *v.* Stacker.

ant's objection, the *post facto* statement of the deceased that " he was knocked up and crippled " by his injuries.

6. SAME. *Excessive verdict. Case in judgment.*

A verdict for $12,000 damages, rendered in a suit brought by a widow against a railway company for injuries causing her husband's death, is so excessive as to demand reversal by this Court, where the deceased was a man of fifty-seven years of age, in declining health, suffering from partial paralysis, and had very limited expectation of life and little and decreasing capacity for labor, and where deceased died of apoplexy, without extraordinary mental and physical suffering, and where there is no evidence of wanton or grossly negligent conduct on the part of defendant, and there,is proof of contributory negligence on the part of the deceased.

7. MEASURE OF DAMAGES. *General rules.*

Some valuable rules and observations touching the measure of damages in cases of injuries causing death will be found in this opinion, which cannot be conveniently condensed into a head note.

---

FROM MONTGOMERY.

---

Appeal in error from Circuit Court of Montgomery County. Jo. C. STARK, J.

Action brought by Blanche Stacker against the Louisville & Nashville Railroad Company to recover damages for injuries that she avers were inflicted upon her husband by defendant's negligence, and caused his death. Judgment below, in plaintiff's favor, for $12,000 damages. Defendant appealed.

SMITH & LURTON and HUGHES & HATCHER for Railroad Company.

HOUSE & MERRITT and T. L. YANCEY for Stacker.

SNODGRASS, J.   On the 19th of April, 1883, the husband of defendant in error, while attempting to get off a moving train at Cumberland City, Tenn., on the Louisville & Nashville Railroad, fell, and, it is alleged, sustained injuries from which he subsequently died. This suit was brought by his widow for damages resulting, the amount claimed being $25,000. There was a verdict and judgment against the railroad company for $12,000, and it appeals and assigns errors.

The facts, so far as they need be stated for the determination of questions involved, are, that Geo. Stacker, who was in the employment of the defendant company as station agent at Cumberland City, boarded a pay train to receive the amount due him for his services on the date stated. He had received and receipted for the amount due him and turned to leave the car, when the bell rang and the train started. He hurried out, and, while it was still moving slowly, stepped off and fell, and, it is claimed, was fatally injured; though at the time he did not appear to be, or suppose himself to be, seriously hurt.

The deceased was an old man—fifty-seven—and in declining health—suffering from partial paralysis. He died of apoplexy; and it is insisted on the one hand that this was occasioned by the fall —on the other that the death was not thus occasioned or hastened, and that he was not in fact injured seriously by the fall.

This was a vital issue, most seriously contested

on both sides, and much evidence was introduced *pro* and *con.* Among the witnesses examined for the plaintiff was Clay Stacker, an attorney, and nephew of deceased. He was permitted to testify, over objection of defendant, that when he was sent for by his uncle, in May, to bring this suit against the railroad company, his uncle told him "he was knocked up and crippled." This was manifest error.

No other errors are assigned in the admission of testimony, and only one which we deem material to be noticed in the charge of the Court, predicated upon the refusal of the judge to embrace in his charge the following special instruction asked by defendant:

"If you find that reasonable time was not given the deceased to get off the train after he was paid, then the defendant would be guilty of negligence; yet the violation of this duty would not justify the deceased in exposing himself to danger in getting off the cars while in motion. And if you find that, in view of the age and physical condition of the deceased at the time, and that this condition was known to the deceased, that it was imprudent in him to undertake to get off a moving train, then this would be such contributory negligence as would defeat any recovery in this case."

The Court had just given a similar charge on defendant's request down to the effect of such contributory negligence, which he charged would be such as must be taken to diminish the damages

which plaintiff would otherwise be entitled to recover. The question is, therefore, upon the facts and the request, fairly presented, whether the act of an employe of the age and in the condition of feebleness described, in attempting to leave a moving train, not being expressly ordered to do so, is guilty of such contributory negligence as defeats instead of diminishes a recovery as a matter of law.

This inquiry involves, first, the question whether, under the circumstances, the railroad company was chargeable with any less degree of care toward such an employe than it would have been toward a passenger. It is earnestly insisted, on behalf of the company, that it was not under obligation to exercise the same or an equal degree of care and diligence required in respect to a ' passenger. To this we cannot assent. The plaintiff was not an employe on the train. He had nothing to do with its control or operation. He was invited on board for the purpose of attention to the business for which the train was being used, and, under the circumstances, was entitled to no less care and consideration than any other person or passenger lawfully on board.

The question is, then, narrowed to the limit within which it must be determined, had a *passenger*, impliedly invited to alight from the train while in slow motion, done so, and sustained a fall in consequence.

It has been held in the courts of several States that such action is negligence *per se*, and that if

injury results no damages can be recovered; but this is contrary to the current of judicial opinion in this country, at least. The true rule deducible therefrom is stated in Woods' Railway Law, Vol. II., page 1130, to be that: "In all cases the question is one of fact whether, in view of the particular circumstances, the passenger was guilty of negligence in attempting to leave the train while it was in motion. In this, as in all other matters where the safety of the passengers is concerned, the company owes a duty to the passenger to act with proper care and caution; and if the motion of the train is not entirely stopped, and the passenger is expressly or impliedly invited to leave the train while moving at a slow rate of speed, he has a right to presume that it is safe for him to do so, and the company, having virtually told him that it was safe, is estopped from saying that the passenger was guilty of doing what it had advised him to do [or, we add, manifestly intended him to do, and have impliedly advised him under facts of this case].

"The passenger may not, in all cases, rely upon the assurance of the company in this respect, but must exercise his own judgment where there is reason to doubt the soundness of the advice; but, as between a mere doubt and the experience and superior knowledge of the company's officers and agents, he has the right to give way to the latter, unless the rate of speed at which the train is moving [or, we add again, his own feebleness] is

such as would prevent a man of ordinary prudence from acting upon it."

"If the train is moving slowly, and there is no *obvious* danger in getting off, it cannot be said to be negligence *per se* to make the attempt, especially if the passenger is directed to do so by the conductor or brakeman; and it would be error to instruct the jury that such an attempt, *per se,* constituted contributory negligence." *Ibid.,* p. 1129.

"As a rule, it may be said that where a passenger, by the wrongful act of the company, is compelled to choose between leaving the cars while they are moving slowly, or submitting to the inconvenience of being carried by the station where he desires to stop, the company is liable for the consequences of the choice, provided it is not exercised negligently or unreasonably." *Ibid.,* pp. 1131–2.

To the same effect are the cases cited in Thompson on Carriers of Passengers, pages 227–267.

The earlier cases established the rule that leaving a train in motion was such negligence as defeated the right of recovery, unless done to avoid danger of remaining on board, and this is still stated as the "general rule" in many authorities. 2 Wood on Railways, p. 1126; Thompson on Carriers of Passengers, p. 267. But the rule we have laid down is the modern one, formulated from the many exceptions, and this modification has been before recognized by this Court. *Railroad Co.* v. *Connor,* 15 Lea, 258.

It will be noticed that the rule laid down in this case, is in view of the fact that the deceased was impliedly invited to leave the train while moving by the act of the company's servants in starting the train as soon as they had finished the business for which they had caused him to enter it, and upon termination of which he was expected to leave. It is not hereby intended to depart from the rule as laid down by this Court in *Railroad Co.* v. *Massengill,* 15 Lea, 328, that "where the party injured is not induced or directed at the time, by act or word of the company's agent, to get off, and does get off, he does so at his own risk." We merely hold, upon the facts of this case, 'that where the company has brought an employe aboard a pay train, to remain only until he is settled with, and for no other purpose, that such business being finished, an invitation to depart is implied, and the leaving, under the circumstances, is to be treated as done upon the order of the company.

Such being the rule, then it was not error to refuse the instruction asked.

Upon the facts, whether or not the deceased was guilty of such negligence as would prevent a recovery, should have been left to the jury; and, of course, in that inquiry it was proper that the jury should consider the rate of speed, the physical condition of the deceased, and all the attendant circumstances. Thompson on Carriers of Passengers, p. 267.

A third error assigned, was the refusal of the

Circuit Judge to set aside the verdict on account of excessive damages.

The Court had instructed the jury that the act of the deceased in getting off the train while in motion might be looked to in mitigation of damages. Whether this was such negligence as would prevent a recovery or not, it is not a matter of controversy under the facts that this should not only have been looked to, but that it should have been—as it evidently was not—given proper consideration by the jury, and that the verdict returned was not justified by either the misconduct of the defendant, or freedom from fault of deceased, and it should not have been allowed to stand.

As this injury, if any was inflicted, occurred after the Act of 1883, approved March 28th (Acts, 1883, page 259), went into effect, the damages, if any recoverable, were "for the mental and physical suffering, loss of time, and necessary expenses resulting to the deceased from the personal injuries, and also the damages resulting to the parties for whose use and benefit the right of action survives from the death consequent upon the injuries received."

There was no evidence of any wanton or grossly negligent conduct on the part of the company. At most, it was an act of carelessness without intended, anticipated, or probable injury to any one; and the verdict, if sustained at all, must be upon the theory that it was only a fair compensation upon the terms of the statute.

It is said, and is true, that the deceased was a worthy man, and that the value of such a life— and, indeed, of any life—is impossible of accurate computation. It is further argued that, as the recovery may include compensation for mental and physical anguish, such suffering is not to be estimated by any rule of value, and that compensation therefor cannot be limited, and a jury is justified in going to any amount. This specious and plausible argument is unsound. In such a case as this the question is not merely, what is, in fact or fancy, the value of a human life, or what amount must be taken to compensate for mental and physical suffering. These are but elements of the question. The primal inquiry is not, what is the value of the life taken. It is whether and how much negligence was displayed in taking it, and whether and to what extent the negligence of the deceased caused or contributed to it; and from the reasonable and just compensation to be given upon determining the first inquiry against the negligent wrong-doer, what amount should be deducted on account of the contributing fault of the deceased. In the adjustment of these questions, of course the value of the life must be in reasonable aspects estimated, and in that connection there are some practical rules to be applied, which are sometimes called "cold calculations," because they require a dispassionate estimate of the real condition and expectation of life at the time of the injury. By whatever term, however, they may be desig-

nated, they are just, and, so far as it is practicable to do so in so delicate and difficult a question, are intended to arrive at justice.

The age, condition, capacity of earning money, and expectation of life, are all to be considered; and not only considered, but given due weight in arriving at what is a fair and just result, which is and ought to be the aim and end of every litigation. In the case under consideration we have already stated the age and feeble condition of deceased. Upright and honored as it may have been, dear as it was to him, and devoted as the evidence shows it to have been to his family, the life of deceased when injured was of very limited expectation. The evidence strongly indicates, if it does not show with reasonable certainty, that he could have lived but little longer. His capacity to labor for his family was nearly gone, and the amount he could earn for them reduced then to about twenty-five dollars per month, with probability of early incapacity to do the work necessary to secure even that. Neither his mental nor physical suffering appears to have been extraordinary, and at most it cannot be said that this evidence does not leave it free from doubt that the injury he received caused either suffering or death. While the jury was justified in concluding that it did do so, yet there is much evidence to the contrary, and it cannot be assumed to be clearly established.

Under these facts, the jury gives a verdict which, even if rendered in case of the death of a

man resulting clearly from negligence of the rail-
road company, unmixed with any contributing fault
of deceased, would be regarded as ample for com-
pensation and punishment, to say no more.  It is
evident that in this case it is not a reasonable and
fair compensation, and the Court should have
promptly set it aside.  It is idle to give such a
charge as was done on the question of mitigation,
if such a verdict is accepted as a proper interpre-
tation of it.  It should be given with meaning,
and conformity to it *required*, or it serves the pur-
pose only of a harmless generality, which defend-
ants may hope to have charged, and despair of
seeing produce any legitimate beneficial result.

Juries intend to be both just and reasonable,
but often inexperience in the trial of such ques-
tions, excited emotions of pity for past suffering,
and sympathy with present distress, which does so
much honor to our better nature under other cir-
cumstances, and so much to defeat the course of
justice when operating to obscure the judgment in
so serious a situation as the trial of dry issues of
human right, combine to bring them to conclu-
sions which are inconsistent with law and justice;
and in such cases the Judge should always interpose,
and preserve the rights of parties under his more ex-
perienced and dispassionate apprehension of the law.

The judgment is reversed, and the case re-
manded for a new trial.

Judge Lurton, having been of counsel in this
case, did not participate in the decision.