Mrs. Campbell, the plaintiff below, was a passenger upon a bus of the defendant Motor Company on Friday, April 22, 1938, traveling from Elk Park, North Carolina, to Johnson City, Tennessee, which route was a mountainous one; the Motor Company operated buses from Johnson City to Hickory, North Carolina, a distance of 114 miles, both ways daily, and a bus leaving Johnson City for Hickory, North Carolina, met the bus upon which the plaintiff was riding upon the mountain about 30 miles from Johnson City, and these two buses meeting, it was decided by the drivers, the bus from Johnson City having had engine trouble, that they would exchange buses in order that the bus might be returned to Johnson City and the engine trouble corrected, the driver not thinking it safe to travel on to Hickory and make a return trip since the motor indicated trouble.
The buses were driven to the side of the road and parked for the purpose of transferring the passengers. Mrs. Campbell was a heavy woman, weighing 250 pounds, and she had a weak left knee, having suffered an injury some twenty years before to this knee, and she told the bus driver that she would have to have assistance in getting off of the bus, or a portable box or footstool to step upon because of the distance from the step to the ground. The driver agreed to assist her and took hold of her left arm and directed her to step off on her right or sound leg. She took hold of a handbar on the side of the door with her right hand and when she was in the act of stepping down, she lost her grip on the handbar and she fell to the ground. The full details will be shown by her testimony to be quoted. She suffered an injury to her right ankle and other bodily bruises which incapacitated *Page 334 
her for a long time, and she at the time of the trial required crutches in order to walk.
The plaintiff filed suit against the company to recover damages for her injury; in the declaration she states the facts as above indicated, but in greater detail, and then alleges the following specific acts of negligence on the part of the defendant:
"(1) That the defendant was negligent in stopping the bus in which plaintiff was riding at the time, place and under the circumstances hereinbefore shown, and in ordering her without any reasonable cause to leave the bus and get on another bus belonging to the defendant.
"(2) That the defendant was negligent in not bringing the bus to a standstill for the purpose of exchanging passengers at a position on the right side of the highway where the distance from the lowest step of the bus to the ground would have been very short, but to the contrary the driver stopped the bus on the left side of the highway where the lowest step of the bus was from two and a half to three feet from the ground and which step was immediately over a portion of the road which was covered by loose gravel.
"(3) Because the driver of defendant's bus with full knowledge of the unusual size and weight of plaintiff, and after having been warned by her that she had a weak left knee and could not safely descend the steps of the bus to the ground at the point where it was brought to a standstill without the aid of a stool or other object for her to step on, `wilfully, wantonly and negligently refused to provide such object or stool as requested and otherwise negligently failed to render plaintiff the necessary assistance in her efforts to step from the bus to the ground as he had ordered her to do.'
"(4) Because the driver of defendant's bus on which plaintiff was riding stopped the bus at the time, place and under the circumstances hereinabove shown, and ordered the plaintiff and other passengers to leave the bus on which they were riding and go aboard another bus in the manner and under the circumstances shown in the declaration, `all of which was done by said employee and agent of the defendant in a careless, heedless, reckless and negligent manner, in wilfull and wanton disregard for the rights or safety of the defendant's bus as aforesaid, and especially in wilfull or wanton disregard of the rights or safety of the plaintiff.'"
The trial judge submitted the issues to a jury and it returned a verdict in favor of the plaintiff for $5,000, when the defendant filed its motion for a new trial, complaining because the judge had declined to sustain its motion for a directed verdict on the ground that there was no evidence to support a verdict. The motion was taken under advisement, and the trial judge on a later date sustained the motion, granted a new trial and directed a verdict in favor of the defendant, dismissing the suit. He filed a memorandum opinion in support of his *Page 335 
action, which is made a part of the record. The plaintiff then filed her motion for a new trial, and it being overruled she appealed in error here. The trial judge's opinion reads as follows:
"When the plaintiff was called upon to alight and observe the step she decided she could not take it in safety. She informed the driver she could not step down without something to step on or some assistance.
"Thereupon the driver offered to assist and got off upon the ground to do so.
"Thinking that with the help of the driver she could get down safely, the plaintiff took hold of a rod provided for that purpose with her right hand, the driver took hold of her left arm.
"The driver told the plaintiff to step with her good foot, which she did.
"Then, as she says, `the step was so high and my weight so great it pulled my hand loose from the rod and my ankle turned and knee crumpled under me and I fell.'
"The plaintiff could see and says she did see the condition under which she would have to alight, and had declined to alight without assistance. She knew best the character and extent of her infirmities and the strength of the arm to which she would entrust her weight.
"The immediate cause of the fall was that the distance of the step and the weight of the plaintiff caused her hand to pull loose.
"The case of Louisville N. Railroad Co. v. Stacker, 86 Tenn. 343, 348, 6 S.W. 737, 6 Am. St. Rep., 840, involved facts in which the superior knowledge of the carrier raised a presumption of assurance to the passenger of the safety of the course of conduct.
"Here the passenger determined, with superior knowledge, with experience in stepping up and down, even from buses, that she might proceed with safety.
"The Court cannot logically find that the driver should have anticipated peril in a course of conduct which the passenger considered safe.
"Let the motion for new trial be sustained, also the motion for peremptory instructions."
The plaintiff testifies as follows:
"Q. Did you start to get off?
"A. The lady in front of me got off first and I stepped down the first step on the inside of the bus and I seen the step was so much higher than it was when I got on the bus that I didn't think I could make it unless I could have something to step on or had help.
"Q. Just state when you got up to get off what you said to the driver?
"A. I told the driver I could not step down the high step unless I had something to step on or had help.
"Q. What was his reply? *Page 336 
"A. He said he would get down and help me.
"Q. You said something about the step being high, I want you to explain that to the jury.
"A. Because I had a crippled limb, have had it for twenty years, and when I made a high step I never could step on this side. This step the way the bus was sitting — the bus seemed to me was sitting kind of slanting on the side of the highway on the shoulder, I believe they call it, of the highway — naturally that made the step higher than it would have been if it had been sitting level, and when I looked at it I was afraid to undertake it.
"Q. Just tell the court and jury what you told the driver.
"A. I told the driver I couldn't step off unless I had something to step on or somebody to help me, and he said he would help me.
"Q. What did he say about putting anything there to help you?
"A. When I told him I couldn't step off without something to step on he said he didn't have anything for me to step on, but that he would help me.
"Q. Did he get out or what?
"A. Got down.
"Q. Tell exactly what happened. Did you undertake it after he helped you?
"A. I undertook to go because he was a man and I took hold of the rod on the side of the door and I thought with his help on the other side I could get off all right because I had got off buses without any accident and when I made the step, he said, `step with your good foot,' I did that and my weight was so great it pulled my hand loose from the rod and I fell. My ankle turned and my feet just crumbled under me.
"Q. When you started to get out, did the driver take hold of your arm?
"A. Yes sir, he was on the ground.
"Q. What was the condition of the ground with reference to having lots of gravel on it?
"A. I didn't notice it at the time, but when I hit it there was loose gravel on the side of the highway.
"Q. When you finally stepped our or fell out, was that on the gravel at the shoulder of the road?
"A. On the gravel at the shoulder of the road.
"Q. Did he hold on to that arm or did he turn loose or what happened?
"A. When he took hold of my arm here, of course, he was helping me on this side, and I had hold of the rod on this side. When I stepped down, the step was so high it pulled my arm loose and naturally I gave down when I pulled loose and I fell. After I fell I was in so much pain I don't know what I did. . . .
"Q. How near was this other driver when you called for the stool *Page 337 
"A. I don't know.
"Q. Was he in sight?
"A. Yes, he was doing something to the bus he was on, I reckon.
"Q. He was not called to help you?
"A. No.
The witness was later recalled and repeated her version as follows:
"As the gentleman said a while ago, this rod was on the inside of the doorway as you go down and I took hold of that rod. If this other man had hold of my arm, I am not conscious of it because he was behind me. The driver took hold of my left arm when I made the step and my hand slipped off the rod and pulled me sideways and I fell sideways. I fell at the side of the bus. If you will hand me that picture, I will show you exactly how I fell.
"Q. I believe you said you started out face first?
"A. Certainly. I came down right this way. The driver was standing right there and I had hold of this rod. I can't see very well, and when I made that step it was so high my hand pulled off that rod and I went down, all my weight on this knee. It threw me this way. If I had come down backwards, you know I would have busted my chin. I wouldn't have wheeled plumb around and turned this way."
From this testimony, the court is of the opinion that the prime and proximate cause of the fall was the fact that the plaintiff lost her hold upon the rod, and as she stated, "pulled me sideways and I fell sideways." The company's servants could not reasonably anticipate such an occurrence, and for this reason, in the court's opinion, cannot be charged with negligence in not so anticipating it. This being true the company was not accountable for the prime and proximate cause of the injury and it violated no duty owed to the plaintiff by contract or tort which could be connected with the prime and proximate cause of the accident. The plaintiff's suit is not dismissed because of her contributory negligence, for her hand slipping and the loss of her hold upon the handle bar was a misadventure and not a negligent act upon her part. She was not responsible for this misadventure, but neither is the company, and it being the cause of the accident she has failed to show a breach of duty on the part of the carrier. These facts render inapplicable authorities cited by the plaintiff-in-error for the purpose of acquitting her of contributory negligence. The court holds she was not guilty of contributory negligence. The photographs in the record show the position of the parked bus, and the height of the step from the ground. Its distance is estimated by the plaintiff's proof as two feet and is shown by actual measurement by the defendant's proof as nineteen and one-half inches; and that the usual distance from the street to the step is eighteen inches.
The plaintiff took in the situation, knew her capacity, for she said *Page 338 
she had gotten in and out of buses, and then undertook to step down with the assistance of the driver and lost her balance because her hand slipped which, as she said, "pulled me sideways," and these facts convinced the court that the acquiescence and assistance in her conduct by the bus driver was not a contributing cause to the injury.
It is assigned as error and argued that since the plaintiff purchased a through ticket it was a breach of the contract of carriage for the defendant to stop and change buses, requiring her to get out and on another, while in transit, and if she had not been required to do this the accident would not have happened, thus making the change of buses the prime and proximate cause of her injury. In support of this the recent case of McClellan v. Tennessee Electric Power Co. (Tenn. Sup.),123 S.W.2d 822, 823, 120 A.L.R., 928, is cited. In that case the driver lost consciousness and ran the bus into a pole; the company was responsible for this misadventure under its contract to carry, and since the plaintiff was injured without fault on his part, then the duty to safely transport him was violated. But in this case the company is not responsible for the misadventure since it happened to a passenger, and it is not covered by its contract of carriage. The company has a right to guard against negligent operation of the bus by exchanging buses in transit and requiring the passengers to transfer; the company is the judge of the reasonable operation of the buses, and in the absence of negligence this right cannot be questioned. The undisputed evidence shows that the motor was missing coming up the mountain, and the conclusion necessarily follows that it was an act of caution to return the bus to Johnson City, a distance of 30 miles, than to take it on to Hickory and back to Johnson City, over the mountainous route, the distance from the two points being 114 miles. The fact that the motor did not miss on its return to Johnson City does not discredit the testimony of the driver, especially in view of the fact that it is not reasonable to suppose the transfer would have been made in the absence of an apprehension on the part of the driver.
We find no breach of the contract of carriage, nor any actionable negligence on the part of the defendant, and the judgment below is affirmed with costs.
Ailor and McAmis, JJ., concur.