## DAVIDSON BENEDICT CO. *v.* SEVERSON.

### (*Nashville.* December Term, 1902.)

1. **MEASURE OF DAMAGES. For wrongful injuries result-ing in death. General rule stated.**

   *Under statutes* (Shannon's ode, secs. 4025-4028), provid-ing that the right of action for personal injuries caused by negligence, resulting in death, shall not thereby abate or be extinguished, but shall survive for the benefit of the widow and children or next of kin of decedent, and providing the manner and by whom suit therefor may be prosecuted, *and under a subsequent statute* (Shannon's Code, sec. 4029) providing that in the cases mentioned above, the party suing shall, if entitled to damages, have the right to recover for mental and physical suffering, loss of time and expenses, resulting to the deceased from the personal injuries, and also the damages resulting to the parties for whose use the right of action survives, the damages recoverable consist of *two classes*:

   *First, damages* purely for the injury to the deceased him-self;

   *Second,* the *incidental damages* suffered by the widow, children, or next of kin, from the death;

   And both are recoverable in one and the same action. (*Post, pp.* 576-639 generally, but especially 578-580, 594-595, 614-617, 632.)

   See acts and cases cited under last headnote.

2. **SAME. Same. What damages are embraced in first class.**

   In the *first class* are embraced damages for the mental and physical suffering, loss of time and necessary expenses re-sulting to the deceased from the personal injuries. (*Post, pp.* 614, 620.)

3. **SAME. Same. What damages are embraced in the second class, and how determined.**

   In the *second class* is embraced the *pecuniary value of the*

Davidson Benedict Co. v. Severson.

*life of the deceased*:    Railroad *v.* Wyrick, 99 Tenn., 500; Collins *v.* Railroad, 9 Heisk., 851; Railroad *v.* Stevens, 9 Heisk., 12.

**To be determined—**

(a) Upon a consideration of his expectancy of life, his age, condition of health and strength. Railroad *v.* Spence, 93 Tenn., 173; Railroad *v.* Stacker, 86 Tenn., 343.

(b) Capacity for labor, and for earning money through skill in any art, trade, profession, occupation or business. Railway Co. *v.* Howard, 90 Tenn., 144; Bridge Co. *v.* Barnes, 98 Tenn., 401; Railway *v.* White, 5 Lea, 540.

(c) And his personal habits as to sobriety and industry Railroad *v.* Prince, 2 Heisk., 580.

**All modified, however,**

By the fact that the expectancy of life is at most only a probability, based upon experience, and also by the fact that the earnings of the same individual are not always uniform. Railroad Co. *v.* Spence, 93 Tenn., 173. (*Post, pp.* 614-615, 620.)

**4. SAME. Same. Same. But one cause of action.**

There is but *one cause of action* embracing the first and second classes of damage. While in some of the cases (notably, Collins *v.* Railroad, 9 Heisk., 851), it is said that damages belonging to the second class are to be estimated as if the deceased were himself still alive, but totally disabled, and in that condition suing for the injury, yet, for practical purposes, it is unnecessary that this supposition be called to the attention of the jury, or considered by them; for it is sufficient that the pecuniary value of the life destroyed may be ascertained, as far as such a matter can be ascertained at all, in the manner and according to the rules already laid down. (*Post, pp.* 616-617, 633-634.)

**5. SAME. Same. Existence of beneficiary to be shown but not to enhance damages.**

It is proper to prove the existence of children or next of kin of the deceased, not for the purpose of enhancing the damages, but only to show the existence of beneficiaries provided for in the statute. (*Post, p.* 617.)

Cases cited and approved: Collins *v.* Railroad, 9 Heisk., 841;

Railroad *v.* Davis, 104 Tenn., 442; Freeman *v.* Railroad, 107 Tenn., 340; Daniel *v.* Coal Co., 105 Tenn., 470.

**6.  SAME.  Same.  Not necessary to prove widow or next of kin dependent on deceased.**

There need be no testimony introduced for the purpose of showing that the widow, children, or next of kin, were dependent for support or pecuniary aid upon the deceased in his lifetime; it is sufficient, so far as this phase of the matter goes, to prove the status of widow, child, or next of kin, as such. (*Post, p.* 623.)

**7.  SAME.  Same.  Nothing can be allowed as "solatium," or for mental anguish, to the widow or next of kin.**

Under these statutes there can be no allowance as damages to the beneficiaries of the cause of action for their grief or mental anguish occasioned by the death of the deceased or as a *"solatium;"* that is, for the loss of moral aid, comfort, counsel and companionship of the deceased. (*Post, pp.* 630-631, 633.)

Cases cited:  Railroad *v.* Prince, 2 Heisk., 580; Railroad *v.* Stevens, 9 Heisk., 12-18; Railroad *v.* Wyrick, 99 Tenn., 500.

**8.  SAME.  Same.  Double damages in second class not allowable.  Case in judgment.**

Instructions to the jury in an action for the wrongful death of decedent, that the measure of damages is such as the deceased himself could have recovered had he been permanently disabled for life and were himself prosecuting the suit, and in addition thereto also such pecuniary damages as have been sustained by the widow and child (the only beneficiaries of the recovery sought in the case) consequent upon the decedent's death, *are erroneous,* in that, these two clauses virtually cover the same damages, and the last clause allowing pecuniary damages  .  .  . sustained by the widow, etc., the jury are, in effect, directed to *duplicate* the damages which had already been provided for in the direction that they were to assess such damages as the deceased himself could have recovered had he been permanently disabled for life, and he himself were prosecuting the suit.  There is no warrant for the allowance of *duplicate* damages either in the statutes or the decisions of the supreme court. (*Post, pp.* 676-639 generally, but especially 634-639.)

Davidson Benedict Co. v. Severson.

Acts cited and construed: Acts of 1871, ch. 78; Acts of 1883, ch. 186.

Code cited and construed:   Secs. 4025-4029 (S); 3130-3134 (M. & V.); 2291-2293 (T. & S. and 1858).

Cases cited and reviewed:   Railroad *v.* Burke, 6 Cold., 45; *Railroad v. Prince*, 2 Heisk., 580; Railroad *v.* Stevens, 9 Heisk., 12; Railroad *v.* Mitchell, 11 Heisk., 400; Collins *v.* Railroad, 9 Heisk., 841; Sample *v.* Smith, 1 Tenn. Cases, 284; Fowlkes *v.* Railroad, 9 Heisk., 829; Haley *v.* Railroad, 7 Baxt., 239; Trafford *v.* Express Co., 8 Lea, 96; Railroad *v.* Smith, 9 Lea, 470; Railroad *v.* Smith, 9 Lea, 685; Railroad *v.* Pounds, 11 Lea, 127; Railroad *v.* Toppins, 10 Lea, 58; Railroad *v.* Conley, 10 Lea, 531; Railroad *v.* Gurley, 12 Lea, 46; Railroad *v.* Gower, 85 Tenn., 465; Railroad *v.* Stacker, 86 Tenn., 343; Railroad *v.* Howard, 90 Tenn., 144; Loague *v.* Railroad, 91 Tenn., 458; Railroad *v.* Spence, 93 Tenn., 188; Bamberger *v.* Railroad, 95 Tenn., 18; Andrews *v.* Railroad, (Nashville Dec. Term, 1893); Holston *v.* Coal & Iron Company, 95 Tenn., 521; Railroad *v.* Johnson, 97 Tenn., 667; Railroad *v.* Wyrick, 99 Tenn., 500; Whaley *v.* Cottell, 103 Tenn., 347; Railroad *v.* Davis, 104 Tenn., 442; Daniel *v.* Coal Co., 105 Tenn., 470; Freeman *v.* Railroad, 107 Tenn., 340; Railroad *v.* Bean, 94 Tenn., 388; Railroad *v.* Bentz, 108 Tenn., 670; Bridge Co. *v.* Barnes, 98 Tenn., 401; Railroad *v.* White, 5 Lea, 540; Railroad *v.* Wallace, 90 Tenn., 54; Railroad *v.* Fleming, 14 Lea, 137; Railroad *v.* Guinan, 11 Lea, 98; Spiro *v.* Felton (C. C.), 73 Fed. Rep., 91; Railroad *v.* Butler, 57 Pa., 335.

---

## FROM LEWIS.

---

Appeal in error from the Circuit Court of Lewis County.   SAM HOLDING, Judge.

JOSEPH W. BYRNS, W. H. WILLIAMSON and J. A. BATES, for Davidson Benedict Company.

H. P. FIGUERS, SALMON & TURNER and J. S. SEV-
ERSON, for Severson.

MR. JUSTICE NEIL delivered the opinion of the Court.

This action was brought in the circuit court of Lewis
county by the defendant in error, as the administrator
of W. A. Hollister, deceased, to recover $20,000 as
damages for the death of said Hollister, alleged to
have been caused by the negligence of the plaintiff in
error.

The declaration, among other things, not necessary
to mention, alleged that on or about February 1,
1902, the plaintiffs in error owned and were oper-
ating a sawmill in Lewis county; that the said Hol-
lister was employed by them in the capacity of saw-
yer, and while in the discharge of his duties as such,
and without any negligence on his part, was killed
by the explosion of the boiler attached to the engine,
by means of which the sawmill was operated; that
the boiler was old, defective and unsafe, and wholly
unfit for the work to which it was put; and that its
condition was unknown to Hollister, but was known
to the plaintiffs in error, or could have been ascer-
tained by the exercise of proper diligence and care.
The suit was brought for the benefit of the widow
and child of the deceased.

The plaintiffs in error, who were defendants below,
entered a plea of not guilty.

There was evidence tending to sustain the allega-

Davidson Benedict Co. v. Severson.

tions of the declaration, and the jury rendered a verdict of $9,000 in favor of the plaintiff below, and judgment was rendered thereon by the court, after a motion for a new trial had been overruled. From this judgment the plaintiffs in error prayed and obtained an appeal, and have assigned errors.

The first error that claims our attention is the charge of his honor upon the measure of damages. After stating to the jury the substance of chapter, 186, p. 259, Acts 1883, he told them that there were two classes of damages assessable thereunder: First, such damages as the deceased himself could have recovered "had he been permanently disabled for life," and he himself were prosecuting the suit, and that in estimating this class they should take into consideration the mental and physical suffering of the deceased, his earning capacity, and the probability of his continuance in life; secondly, that, in addition to the foregoing damages, the plaintiff would be entitled to recover also such pecuniary damages as had been sustained by the widow and child, consequent upon the death of the husband and father, the said W. A. Hollister, and that in estimating this latter class of damages they should look to the ability of Hollister to furnish his wife and child a support, and the nature and extent of the support he did give them, and to the probability of the continuance of that support, and his ability to provide, and to the

Cates 1-19

probability of a continuance of their dependence upon him for support.

Error is assigned upon this portion of the charge, and the questions presented thereby were fully argued at the bar, and, in addition, we have been furnished with briefs upon both sides—not only briefs prepared in this case, but also in another case pending before the court, involving similar questions. All of these briefs we have read, and attentively considered.

The questions made, and argued with great ability, go to the foundation of the rules for measuring damages recognized in this State in the class of cases we have before us, and we have decided to undertake and present a review of the whole matter. We are the more moved to undertake such an inquiry, although the labor it imposes is very great, because of the frequent misapprehensions of these rules that appear in the charges of able and learned circuit judges, indicating some uncertainty, real or apparent, in our reported decisions, which are the source of authority to which they must resort when instructing juries brought before them.

The provisions of the Code are:

"2291 (Shannon's Code, sec. 4025). The right of action which a person, who dies from injuries received from another, or whose death is caused by the wrongful act or omission of another, would have had against the wrongdoer, in case death had not ensued, shall not abate or be extinguished by his death, but

shall pass to his personal representative, for the benefit of his widow or next of kin, free from the claims of creditors.

"2292 (Shannon's Code, sec. 4026). The action may be instituted by the personal representative of the deceased, but if he declines it, the widow and children of the deceased may, without the consent of the representative, use his name in bringing and prosecuting the suit, on giving bond and security for costs, or in the form prescribed for paupers. The personal representative shall not in such case be responsible for costs, unless he sign his name to the prosecution bond.

"2293 (Shannon's Code, sec. 4028). If the deceased had commenced an action before his death, it shall proceed without a revivor. The damages shall go to the widow and next of kin, free from the claims of the creditors of the deceased, to be distributed as personal property."

On December 14, 1871, p. 70, ch. 78, of the acts of that year, the following amendment was passed:

"Section 1. That section 2291 of the Code of Tennessee be so amended as to provide that the right of action which a person who dies from injuries received from another, or whose death is caused by the wrongful act, omission or killing by another, would have had against the wrongdoer, in case death had not ensued, shall not abate or be extinguished by his death, but shall pass to his widow, and, in case there

is no widow, to his children, or to his personal representative, for the benefit of his widow or next of kin, free from the claims of creditors.

"Sec. 2. That section 2292 be so amended as to allow the widow, or if there be no widow, the children, to prosecute suit, and that this remedy is provided in addition to that now allowed by law in the class of cases provided for by that section, and 2291 of the Code, which this act is intended to amend."

Another statute was passed in 1883, page 259, ch. 186, of the acts of that year. This act will be stated later in connection with certain decisions of this court, so as to present it in its historical connection.

In order that we may properly understand the meaning of these sections in respect of the measure of damages applicable thereunder, it is necessary that we should review their history after enactment, as they appear in our judicial decisions.

The first reported decision bearing upon the matter is *Railway Co.* v. *Burke,* 6 Cold., 45, decided at the December term, 1868. At that time there were in force only sections 2291 (Shannon's Code, sec. 4025), 2292 (Shannon's Code, sec. 4026) and 2293 (Shannon's Code, sec. 4028). Burke was killed upon the line of the railway company, and the latter was sued for damages. The circuit judge charged the jury that the damages recoverable were those suffered by the widow and children by reason of the killing of Burke, the husband and father. In passing upon this point,

and speaking through Judge Smith, this court said: "The damages recoverable are those suffered by Burke, and which he could have recovered had he lived; and not those suffered by his widow and children in consequence of his being killed. Such is the proper construction to be put on Code, secs. 2291, 2292 and 2293. The cause of action is the injury done to Burke, and the right of action of the personal representative is for that cause of action and is that right of action Burke had and could have prosecuted had he lived, and the damages recoverable are for that cause of action." Again: "The killing of a man is not of itself a cause of civil action. The damages recoverable are for what was incurred or suffered while the person lived. If the killing be absolutely instantaneous, damages are not recoverable, for that would be giving damages for the mere act of killing."

The charge of the circuit judge was, therefore, held to be erroneous, and the judgment in favor of the administrator below was reversed, and the cause remanded for a new trial.

The next case was *Railway* v. *Prince,* 2 Heisk., 580, decided in January, 1871. In this case it appeared that the husband of the plaintiff below, Nancy Prince, had been killed, as was stated in the opinion, instantaneously, upon the track of the railway company. The widow, having qualified as administratrix, sued the company, and in her declaration placed her right to recover upon "such damages as she and

her children may have sustained by reason of defendant below having deprived of his life the husband of the plaintiff, Nancy, and the father of the children." No other claim for damages was made in the declaration.

During the progress of the trial the railway company offered to prove by several witnesses that Prince was a drunken, worthless man; that he provided nothing for his family, and consumed what his family supplied. This testimony was objected to, and the objection sustained, and the evidence rejected, and error was assigned upon the action of the court. This court, speaking through Chief Justice Nicholson, said that it was manifest that this evidence was erroneously rejected if the plaintiff below was entitled to recover for the injury which she and her children had sustained by the death of the husband and father. The circuit judge excluded the testimony on the ground that such damages could not be recovered, but this court said upon this point that it was obvious, if the plaintiff below could not recover damages for the loss of her husband, she could recover none whatever in the suit, because she claimed none other in her declaration. "This raises the important question," the opinion proceeds, "whether damages sustained by a wife and children in consequence of the killing of the husband and father can be recovered in an action instituted under Code, sec. 2291." Then, after quoting that section, it was ob-

Davidson Benedict Co. v. Severson.

served that one object of the section was to prevent
the abatement of the right of action, which one has
who has received personal injuries, from which such
person subsequently dies; that it was not material
whether the person injured had commenced his ac-
tion before his death or not; that in either case the
section referred to would prevent the abatement of
the right of action, and transmit it to his personal
representative for the benefit of his widow and next
of kin. "Looking to the obvious purpose of the legis-
lature in this alteration of the common law," continues
the chief justice, "we are satisfied it was intended
that the representative of a person who had died from
personal injuries should have the right to recover
damages, not only for the mental and bodily suffer-
ings, loss of time and necessary expenses resulting im-
mediately to the deceased from the personal injuries,
but also for the damages resulting to the parties,
for whose benefit the right of action survives, from
the death consequent upon the injuries received."
Then, after discussing the question whether the sec-
tion of the Code referred to preserved the right of
action in case of instantaneous death, the final result
of the court's deliberations is thus stated: "It follows
that the representative of the deceased has a right to
recover damages sustained by his widow and chil-
dren in consequence of his death, whether the death
resulted instantaneously from the injuries or not. It
would have been absurd to give the right of action
for damages for the mental and bodily sufferings of

a person whose death was instantaneous. Yet a right of action is given for the benefit of the widow or next of kin. It follows that the damages intended to be provided for was the loss of husband and father. Such, we are satisfied, was the intention of the legislature, and we think their intention is manifested with sufficient distinctness in the language employed. This court, in the case of *Louisville & Nashville Railroad Company* v. *Burke,* 6 Cold., 45, put a different construction on the section of the Code under consideration. But, as we can not concur in the construction placed, in that case, upon the section as to the point under examination, we are constrained to overrule so much of the decision as relates to the particular question here discussed."

It was accordingly held in that case that the testimony offered by the company was competent to the effect that the husband and father, for whose death the suit was brought, was a drunken and worthless man, and made no provision for his family.

The next case was *Railroad Company* v. *Stevens,* 9 Heisk., 12, decided in December, 1871. This was an action to recover damages for the death of a fireman who was killed by the explosion of a boiler. Upon the subject of the recovery of damages the court, speaking through Judge McFarland, said: "Under this statute the damages which the deceased could have recovered had he lived, and his mental and bodily suffering, loss of time, expense, etc., are clearly

embraced, and in fact it has been supposed this was all. There is no express provision that the jury may consider the loss to the widow and children or next of kin; but in the case of the *N. & C. R. R. Co.* v. *Prince,* 2 Heisk., 580, this court held that under this statute it was intended the representative of a person who had died from personal injuries should have the right to recover damages, not only for the mental and bodily suffering, loss of time and necessary expenses immediately resulting to the deceased from the personal injuries, but also for damages resulting to the parties, for whose benefit the right of action survives, from the death consequent upon the injuries received. . . . The result of this decision was to make our statute embrace, in addition to the damages for the suffering of the deceased, his loss of time, etc., had he lived, also the pecuniary loss his death caused to his widow and children or next of kin; and in this latter respect the subject-matter of damages is similar to the statutes of New York and Pennsylvania; and, as we have seen, they are confined to pecuniary damages, and do not allow damages for the grief of the widow or children. We think this is safest. In fact, as remarked by counsel, it is somewhat incongruous to undertake to give compensation to the widow for her grief. We do not see how we could extend our statutes further than the New York and Pennsylvania statutes. We do not doubt

the construction given in the Prince case, but we can carry it no farther."

The next case was *Railroad* v. *Mitchell,* 11 Heisk., 400, 407, decided at the September term, 1872. In this case the opinion in the Prince case was again referred to and reaffirmed.

The next case was *Collins* v. *Railroad,* 9 Heisk., 841, decided, as shown by the reporter's note, at the September term, 1874. That suit was brought by a widow for the killing of her husband, under the act of December 14, 1871, p. 70, ch. 78 (which we have set out, supra), amending sections 2291 and 2292 of the Code. The plaintiff below obtained verdict and judgment, and the railroad company appealed. The first question was that, inasmuch as the killing of the plaintiff had not occurred prior to the passage of the act, the suit could not be maintained by the widow, but should have been brought by the administrator. This construction was held to be unsound. It was next insisted that there was error in the charge of the court "to the effect that in this action the jury could award the damages of the children as well as the widow, when the declaration is only on behalf of the widow." Upon this point the court, speaking through Judge Sneed, said: "It will be seen from section 2293 of the Code that the law itself gives direction to the recovery in such cases. The widow and children are the beneficiaries of the action; and this section stands unrepealed and unaffected by any

subsequent legislation. The recovery in this case, there being several children, inures to the benefit of the widow and the children, to be distributed as personal property, in the language of the statute. The courts will see to the disposition of the recovery. We have held at the present term, in the case of *Sample* v. *Smith* [1 Tenn. Cas., 284], that, when the action is brought under the Code in the name of the administrator, by the widow, the children are not necessary parties to the action; and we can see no reason for varying the rule in a case like this. In any case when there are children, and the action is brought by the widow or the administrator, the law itself disposes of the recovery to the use and benefit of the widow and children. We see no error in the charge on this subject. We are asked to reconsider and revoke the doctrine announced in the case of Prince, 2 Heisk., 580, which has been adhered to in several subsequent cases, that 'damage may be awarded not only for the mental and bodily suffering, loss of time and necessary expenses resulting to the deceased from personal injuries, but also for the loss and deprivation resulting to the parties for whose benefit the right of action survives,' . . . The word 'damages,' in legal parlance, means the indemnity recoverable by a person who has sustained an injury, either in his person, property or relative rights, through the act or default of another. To constitute a right to recover damages, the party claiming damages must

have sustained a loss; the party against whom they are claimed must be chargeable with the loss. The loss must be the natural and proximate consequence of the wrong. 1 Bouv. L. D., 422. If the plaintiffs had a reasonable expectation of pecuniary advantage from the continuance of the life of the deceased, they may recover for it; and, the greater the value of the life to them, in a pecuniary point of view, the more perfect the right of recovery. Sh. & Redf., Neg., 612. Now, it is argued that it is only the right of action which the deceased would have had, had he lived, that passes to the widow, and that this does not include the incidental injuries to his family occasioned by the wrong to himself, as well as his mental and bodily suffering, etc. If he had lived, and had been disabled for life or a series of years, or even seriously injured, he would have been entitled to compensatory damages. If he had a wife and children, whom he had supported by his industry, to whom he was now unable to render any assistance on account of his injuries, this privation of himself and family would necessarily constitute an element in the computation of damages. And, if his life is lost to them, why may not the privation to them of the aid and maintenance he had given them still enter into the computation of actual damage sustained by them? The widow has lost a husband, the child a father, and both have lost the food and raiment which his industry provided. Had he lived, he could have indemnified

the last privation by his action against the wrong-doer; and, having died, the same right of indemnity passes to them. This is the sense of the law as we understand it, and we see no reason to depart from the doctrine of our adjudged cases upon the subject. *N. & C. R. R. Co.* v. *Mary Stevens,* 9 Heisk., 12." The case of *Collins* v. *Railroad Co.,* although appearing in 9 Heisk., 841, among the decisions of April term, 1872, was, as previously stated, not decided until the September term, 1874. The reporter states in the note previously referred to that he was directed by the court to publish it in 9 Heisk. That volume was not published until August, 1877.

So the cases stood until January term, 1876, when the case of *Fowlkes* v. *Railroad Co.* was decided. This case is also reported in 9 Heisk., 829-841. As to date of decision, see reporter's note on page 829. In this note it is stated that the case was decided at the January term, 1876, and was ordered by the court to be reported in 9 Heisk.. The case is also reported in 5 Baxt., on page 633 *et seq.*

In this case the question for determination was when the statute of limitations would begin to run. In order to determine this, the court found it necessary to consider the nature of the cause of action. In reaching a conclusion upon the point, the court, speaking through Judge McFarland, said: "The purpose [of Code, sec. 2291] seems simply to have been to repeal that rule of the common law that actions for

personal injuries die with the person in those cases where the injured party dies of the injury; but, whether the action be brought by the party himself, or his representative after his death, the cause of action is the same, and is governed by the same laws. . .. . The argument against this view is that the action allowed by this statute is a new action, given to the personal representative; an action which the injured party could not have maintained; that the action is given to the personal representative on account of the death of the injured party; that his death is the cause of action, and this, of course, could not accrue to the injured party himself, but only accrue to his representative, and could not accrue to him until his appointment. This argument, though plausible, is not sound. As we have seen, the statute is equally applicable to cases where the injured party lives a time and to cases where death is instantaneous. When the injured lives a time after the injury, he has a cause of action without the statute. If an action be brought by the party himself, and he then dies of the injury, before judgment, the effect of the statute is to prevent an abatement, and to allow the cause to proceed notwithstanding the death, but not on account of the death. The cause of action was the injury. And in such cases the action after the death is prosecuted for the same cause for which it was brought, and is the same action. In cases where no action is brought

by the injured party himself, the statute allows the action to be brought by the representative. This could not have been done at the common law, and it is, therefore, in this sense, a new and statutory action. But it is brought for the same cause as if the injured party had himself brought the action. . . . It is true that some of the cases seem to have introduced a new element of damages in cases where the action is brought by the representative; that is, damages for the loss of the society, etc., of the husband, father or relative to the widow or next of kin; that in such cases damages might be allowed beyond what would be proper when the action is brought by the party himself. Some of these cases stand upon doubtful grounds; but even where the action is brought by the party himself, damages might, in a proper case, be given, to the same extent as if death had ensued, i. e., where the injury disables the party for life. In such a case the injury, in a pecuniary sense, would be the same as if death had ensued."

It was accordingly held that the statute of limitations begins to run from the date of the injury to the deceased, and not from the date of the appointment of the personal representative. Two of the judges dissented.

Previously, at the April term, 1874, a decision had been rendered (*Haley* v. *Mobile* & *Ohio R. R. Co.,* 7 Baxt., 239), in which the same views which are set forth in the Fowlkes case had been briefly and in-

cidentally indicated in considering the question of punitive damages.

The next case after the Fowlkes case was *Trafford* v. *Adams Express Co.*, 8 Lea, 96, decided at the December term, 1881. In this case the court, speaking through Judge Cooper, said: "Upon a careful examination of the question, and a review of the authorities and the law bearing on the subject, I concur with the majority of the court in the opinion delivered in *Fowlkes* v. *N. & D. R. R. Co.*, not only in the conclusion reached, but in the reasoning on which the conclusion is based. It seems to be clear that the legislature, by the statutory provisions under consideration, intended to abolish the rule of the common law touching the abatement of rights of action for personal torts producing death, and to provide that the right of action of the person injured, subject to his control during life, should survive to his widow and children, or personal representative, as the case may be; and that the only damages which can be recovered in any action under that statute are the damages which the deceased was entitled to recover if he had sued. In this view the statutory provisions are simply those of the abatement and revivor of the particular class of actions; the recovery, in the event of the death of the person injured, without a different valid disposition on his part, being distributable as other personal property of the deceased, free from the claims of creditors. The provisions dovetail ex-

actly into our general system of laws regulating the right of action of deceased persons. There is no anomaly either in the character of the recovery or in its distribution."

The next case was *Railroad Co.* v. *Smith,* 9 Lea, 470, decided at the September term, 1882. Thic case is in strict accord with *Fowlkes* v. *Railroad Co.* and with *Trafford* v. *Adams Express Co.,* supra. The court said: "The damages to be recovered are those sustained by the injured party. The action is not for wrongs to the husband or next of kin. The damages are such as the injured party could have recovered if, instead of being killed, he had been disabled for life; if not the same amount, at least for the same element of damages."

The next case is *Railroad* v. *Toppins,* 10 Lea, 58, decided at the same term of the court as the preceding case. Speaking to the same subject, the court said: "The charge contains one positive error; that is to say, the jury were instructed that, in addition to the damages which the deceased himself ought to have received if he had lived, damages might also be allowed for the deprivation resulting to the parties for whose use the suit is brought, that is, the widow and children. This charge was justified by several expressions in the published opinion of this court, but there has always been conflict of opinion upon the question, and we have more recently held the true rule to be that the action is the same in its

character and as to the element of damages as if death
had not resulted, and the action had been brought
by the injured party himself; and hence damages to
the widow or next of kin in their own right are not
to be considered."

The next case was *Railroad* v. *Conley*, 10 Lea, 531,
534, which was decided at the December term, 1882.
In this case the court said: "In giving instructions
as to the measure of damages, the court told the jury
that they might estimate what the life of the de-
ceased was worth to his widow and children in a pe-
cuniary sense, and might also consider the loss of
his assistance in maintaining the family, educating
and taking care of the children, and allow such sum
in their verdict. This charge is erroneous, as we
held in two cases at the present term," referring to
preceding cases, which we have already mentioned.

Next in the order of time comes the act of March
26, 1883, being chapter 186, p. 259, of the acts of that
year. The statute reads as follows:

"A bill, to be entitled an act to define the measure
    of damages recoverable in case of the death of a
    person caused by the wrongful act, fault or omis-
    sions of others.

"Section 1. Be it enacted by the general assembly
of the State of Tennessee, that where a person's
death is caused by the wrongful act, fault or omission
of another, and suit is brought for damages as pro-
vided for by sections 2291 and 2292 of the Code of

Tennessee, and as provided for by the act approved December 14, 1871, ch. 78, entitled, 'An act to amend sections 2291, 2292, of the Code of Tennessee,' the party suing shall, if entitled to damages, have the right to recover damages for the mental and physical suffering, loss of time, and necessary expenses resulting to the deceased from the personal injuries, and also the damages resulting to the parties for whose use and benefit the right of action survives from the death consequent upon the injuries received.

"Sec. 2. Be it further enacted, that this act take effect from and after its passage, the public welfare requiring it."

There were several cases decided by the court, and opinions published in them, after this act was passed, but in which it appeared that the injuries were inflicted prior to this statute, and consequently the measure of damages applied, assuming them to be really different, was that one which was established in *Railroad* v. *Smith,* 9 Lea, 685, and other cases on that line. These subsequent cases were *Railroad* v. *Pounds,* 11 Lea, 127; *Railroad* v. *Gurley,* 12 Lea, 46, and *Railroad* v. *Gower,* 85 Tenn., 465 (3 S. W., 824. Those cases need not be more particularly mentioned at this time.

The first reported case decided under the statute was *Railroad Company* v. *Stacker,* 86 Tenn., 343 (6 S. W., 737; 6 Am. St. Rep., 840), decided at the December term, 1887. It appeared that the deceased

was injured on the 19th of April, 1883, from which injuries he subsequently died. It also appeared that he was fifty-seven years old, and was a paralytic. The jury rendered a verdict for $12,000 damages, and the railway company appealed. The chief question discussed was whether the verdict was so large as to evince passion and prejudice, in view of the feeble condition and small earning capacity of the deceased at the time he was injured; and it was so held. In deciding this question, after stating that both the negligence of the railway company and of the deceased should be considered in estimating the amount, the court, speaking through Judge Snodgrass, said: "In the adjustment of these questions, of course, the value of the life must be, in reasonable aspects, estimated, and in that connection there are some practical rules to be applied, which are sometimes called 'cold calculations,' because they require a dispassionate estimate of the real condition and expectation of life at the time of the injury. By whatever term, however, they may be designated, they are just, and, so far as it is practicable to do so in so delicate and difficult a question, are intended to arrive at justice. The age, condition, capacity of earning money, and expectation of life, are all to be considered; and not only considered, but given due weight in arriving at what is a fair and just result."

The next case was *Railway Company* v. *Howard,* 90 Tenn., 145 (19 S. W., 116), decided at the April

term, 1891. This case, however, contains nothing concerning the special measure of damages provided by the act of 1883. It merely restates the rule that it is competent to show the ability and capacity to labor of the deceased, as well as his skill in any particular art or profession, in order to show his earning capacity, with the qualification that his earnings for any special year could not be shown.

The next case was *Loague* v. *Railroad,* 91 Tenn., 458 (19 S. W., 430), decided at the April term, 1892. In the opinion in that case the court, speaking through Judge Lurton, said of the act of 1883: "This act in no way changes the mode of suing. The suit must still be prosecuted by the widow, or the children if there is no widow, or by the personal representative of the deceased. It does not confer upon the widow any independent right to sue exclusively for the damages resulting to herself or the children. One action is given. In it all the damages resulting either to the deceased or to those for whose benefit the action may be prosecuted are to be recovered. The only effect of the act is to enlarge the right of the person suing so as to permit the recovery of the damages peculiar to the widow and children, together with the damages which the deceased might have recovered for his own benefit, and on account of his own suffering and loss. . . . The right of action is still the right of the deceased, although the recovery may include as an element such damages as were

sustained by the persons to whom the statute gives
the recovery." This was said in determining the ques-
tion whether the widow's right of action could be
revived in the name of her personal representative
when she died pending the suit which she had insti-
tuted to recover damages for the death of her hus-
band.

The next case was *Railroad* v. *Spence,* 93 Tenn., 173
(23 S. W., 211; 42 Am. St. Rep., 907), decided at
the April term, 1893. In that case it appeared that
the deceased was killed in a collision on the line of
the railway company. Upon the subject of the meas-
ure of damages the court, speaking through Judge
McAlister, said: "The next assignment of error is
based upon the charge in respect to the measure of
damages, viz., 'that in estimating the damages the
jury should look to the proof as to what was the ex-
pectancy of life of the deceased, and see what amount
he was able to and was earning at and before his
death, and from all the proof . . . decide what
he would have earned during this expectancy of life
from the time of his death, and then allow her such
sum as would reasonably compensate her for the loss
of what he would have earned during that expectancy
of life from the time of his death.' This charge was
erroneous. It was perfectly competent for the plain-
tiff to prove the expectancy of life of the deceased, his
capacity for earning money, his habits, age and condi-
tion. But it was erroneous for the court to charge

Davidson Benedict Co. v. Severson.

that they must 'decide what he [the deceased] would have earned during that expectancy of life from the time of his death, and then allow her such sum as would reasonably compensate her for the loss of what he would have earned during that expectancy of life from the time of his death.' The assessment of damages in actions of this character does not admit of fixed rules and mathematical precision, but is a matter left to the sound discretion of the jury. The courts refuse to lay down any cast-iron rules or mathematical formulæ by which such damages are to be ciphered out by juries. It is the duty of the court to point out the different elements proper to be considered in the assessment of damages, but it is erroneous to give the jury a rule by which to figure out the damages as they would a mathematical problem in cases like this, where the future earnings of the deceased and his expectation of life are mere probabilities. . . . The amount the deceased would have earned during his expectation of life was purely a matter of speculation, and his expectation of life was a mere probability. This instruction ignores the fact that plaintiff's intestate was engaged in a most hazardous occupation, and that his expectation of life while it was exposed to the perils of railroad service was more precarious than if he had been engaged in some less dangerous employment. The wages he would have earned were contingent upon his enjoyment of this precarious expectation of life, upon the

constancy of his employment, and upon the perform-
ance of his duties with regularity and satisfaction to
his employer.  The objection to the charge is that
both the elements of damages are treated as assured
facts, and the jury were invited to calculate the dam-
ages by this uncertain standard, instead of leaving
the assessment of the damages to their sound dis-
cretion, upon a consideration of all the elements of
damages admitted as evidence."

The next case was *Bamberger* v. *Citizens' Street
Railway,* 95 Tenn., 18, 35, 36 (31 S. W., 163; 28 L.
R. A., 486; 49 Am. St. Rep., 909), decided at the
April term, 1895.  In that case the court said, speak-
ing through Judge Wilkes: "In the unreported case
of *Andrews* v. *L. & N. R. R. Co.* (decided by the court
at the December term, 1893, at Nashville) it was
held that the elements of damages recoverable under
section 3134 [Act 1883] embraced not only all that
the administrator might be entitled to recover, but
also all that might be recovered by the father in his
own right; and, a recovery having been had as admin-
istrator, it was a bar to any further action by the
father in his own right for loss of his son's services.
It is said the right to recover by the administrator
is the same right that the deceased had if he had lived;
but this is not (construing the statutes together)
strictly accurate, for the right is not only as adminis-
trator, but as father, and the damages are given in
view of both aspects of the case, and embrace both

rights.   The right is not strictly descendible or heritable right, but one arising out of the special statute, and as to its scope is governed by the statute." That suit was an action for personal injuries resulting in the death of Samuel Bamberger, a child about three years of age.   The suit was brought by the father of the child or next of kin of the deceased.   There was a verdict, also judgment, in the court below in favor of the defendant company.   There was evidence tending to show that the father had been negligent in the care of the child, and that the injury had been occasioned thereby.   Speaking to this phase of the case, the court said:   "The underlying principle of the whole matter is that no one shall profit by his own negligence, and to allow the father, who has been guilty of negligence, to recover, notwithstanding that negligence, when he brings the suit as administrator, although he could not do so in his own right, would be to defeat this underlying principle by a mere change of form, when the entire recovery in either event goes to him alone.   Upon principle we think that, no matter how the suit is brought, whether as administrator or as father, it can be defeated by the father's contributory negligence when he is sole beneficiary."

The next case was *Holston* v. *Coal & Iron Co.*, 95 Tenn., 521 (32 S. W., 486), decided at the September term, 1895.   This case, however, merely decided a point of practice in connection with the class of

cases we have before us, and we need not note it further.

The next case was *Railroad* v. *Johnson,* 97 Tenn., 667 (37 S. W., 557; 34 L. R. A., 442), decided at the September term, 1896. That was a suit instituted by the administrator of Mrs. Johnson to recover damages for the alleged wrongful killing of the intestate by the railway company. The point decided was that the right of action which the husband and wife had at common law for an injury to the wife survived, under Code, sec. 2291, to the husband, and that he took the recovery *juri mariti,* to the exclusion of the next of kin, and that, therefore, the child of the deceased wife and mother took no part of the judgment. Speaking of the measure of damages under the act of 1883, the present chief justice said: "It is evident that the passage of this act was not to create a new class of beneficiaries, but to extend the scope of recovery by allowing not only damages which the deceased might have recovered for his or her own benefit, but also such as resulted from the death to the parties 'for whose use and benefit the right of action survived.' With this single modification, it left the law of this State, so far as the rights of the surviving husband in such cases are concerned, as was announced in *Trafford v. Adams Express Co.*"

The next case was *Railroad* v. *Wyrick,* 99 Tenn., 500 (42 S. W., 434), decided at the September term, 1897. That was an action brought by a widow for

the negligent killing of her husband.  In that case
it appeared that the circuit judge had charged the
jury "that they could look to the mental and physical
suffering of the plaintiff [widow] in connection with
the loss of her husband."  After quoting the act of
1883, and noting that the statute expressly author-
ized a recovery for the mental and physical 'suffer-
ing endured by the deceased, and that, without enu-
merating any special elements, it allowed a recovery
for the damages resulting to the parties for whose use
and benefit the right of action survives, the court,
speaking through Judge McAlister, said:  "The ques-
tion then presented for adjudication is whether the
word 'damages,' used in this statute, was intended to
embrace the mental and physical suffering resulting
to the widow or next of kin.  The act of 1883 is al-
most a literal transcript of the rule for the admeas-
urement of damages laid down in the case of *Nash-
ville & Chattanooga Railroad Co.* v. *Nancy Prince*, 2
Heisk., 585.  .  .  .

"In the case of *Nashville & Chattanooga Railroad
Co.* v. *Mary Stevens, Adm.,* 9 Heisk., 12, decided in
1871, it appeared that the trial judge had instructed
the jury that they might allow damages 'for the shock
to the feelings of the wife and children resulting
from the sudden death of the deceased.'  Judge Mc-
Farland, in reviewing the Prince case, said, viz.:
'The result of the decision was to make our statute
(Shannon's Code, sec. 4025) involve, in addition to

the damages for the suffering of deceased, his loss
of time, etc., had he lived; also the pecuniary loss his
death caused to his widow and children or next of
kin; and in this latter respect the subject-matter of
damages is similar to the statutes of New York and
Pennsylvania, and, as we have seen, they are confined
to pecuniary damages, and do not allow damages for
the grief of the widow and children. We think this
is safest. In fact, as remarked by counsel, it is some-
what incongruous to undertake to give compensation
to the widow for her grief. We do not see how we
could extend our statutes further than the New York
and Pennsylvania statutes. We do not doubt the
construction given in the Prince case, but we can
carry it no farther.' We are of opinion, therefore,
that when the rule for the assessment of damages
recovered in the Prince case was re-enacted by the
act of 1883, it was adopted as it was understood and
interpreted by the courts, and was not intended
further to enlarge the elements of damages. The
damages allowed to the widow and next of kin, re-
sulting to them, laid down in the Prince case, was
construed by this court in the Stevens case to mean
pecuniary loss, and not damages on account of grief
and mental suffering of the widow and next of kin.
This construction, we think, is in accord with the
great weight of authority on the subject. . . .
Under our act of 1883 damages for the mental and
physical suffering, loss of time, etc., of the deceased

are also recoverable, and are superadded to the pecuniary damages sustained by the widow or next of kin."

The next case was *Whaley* v. *Catlett*, 103 Tenn., 347 (53 S. W., 131), decided at the September term, 1899. In that case the question for determination was when the statute of limitations would begin to run. In deciding this question the court took into consideration all of the sections of the Code which we have above referred to, and also the act of 1883, and, speaking through Judge Wilkes, said: "We are of opinion that a careful reading of the statutes can lead to no other conclusion than that they provide alone for the continued existence and passing of the right of action of the deceased, and not for any new and independent cause of action in his widow, children, or next of kin. . . . It is alone by virtue of these statutes that a right of action exists in the widow, children, or next of kin at all for the unlawful killing of the deceased, and this right exists under the statute, not because it arises directly to them in their own right, but because it passes to them in right of the deceased." Referring to a former case (Railroad v. Pounds, 11 Lea, 129, 130), in which the act of 1883 had been spoken of as giving a new cause of action, Judge Wilkes proceeds: "The learned judge used an inapt expression in speaking of it as a new cause of action, and the real holding was that the parties suing were not entitled to the new and en-

larged measure of damages provided by that act for
a cause which arose before the act." It was accord-
ingly held that the statute of limitations under the
act of 1883, as well as under the former acts, began
to run from the date of the infliction of the injury
upon the person for whose death the suit was brought.

The next case was *Railway* v. *Davis*, 104 Tenn.,
442 (58 S. W., 296), decided at the April term, 1900.
This was an action brought by a widow for the kill-
ing of her husband. The suit was brought by the
widow for her own use, and the children were not
mentioned in the declaration as beneficiaries. The
court below, notwithstanding the form of the dec-
laration, charged the jury that plaintiff had a right
to recover such pecuniary damages as resulted to
her or the children, for whose use and benefit the
action was brought. Upon objection to this portion
of the charge, the court, speaking through Judge Mc-
Alister, said: "It is insisted that, as the declaration
makes no mention of the children, and the suit was
brought solely for the widow, evidence of the num-
ber of children was improperly admitted, and that
the court erred in instructing the jury that the plaint-
iff could recover such damages as resulted to her or
the children. There was no error in this action of
the court. In *Collins* v. *East Tennessee, Virginia &
Georgia Railway Co.*, 9 Heisk. 641, it was held, viz.:
'In any case where there are children, when the ac-
tion is brought under the Code, either by the widow

or the administrator, the children are not necessary parties. The recovery inures to the benefit of the widow and children, and will be distributed as personal property.' The court in that case also said, viz.: 'It is further insisted that there is error in the charge of the court to the effect that in this action the jury could award the damages of the children ·as well as the widow when the declaration is only on behalf of the widow. It will be seen from the Code that the law itself gives direction to the recovery in such cases. The widow and children are the beneficiaries of the action.' In *Sample* v. *Smith,* 1 Shannon's Cases, 284, it was held, viz.: 'It was not essential that the names of the children for whose use the action was brought should have been set forth. The law determines who are to be entitled to the benefit· of the recovery.' In the case of *Spiro* v. *Felton* (*C. C.*) 73 Fed., 91, it was held, viz.: 'In an action for damages for an injury causing death, brought for the benefit of the widow or next of kin of the deceased, evidence of the number and ages of the children of the deceased is competent.' These authorities are conclusive of this question, and it results that the judgment must be affirmed."

The next case was *Daniel* v. *Coal Co.,* 105 Tenn., 470 (58 S. W., 859), decided at the September term, 1900. In that case the question was, when a damage suit had been brought by the injured person, and he died pending the suit, whether it could be subsequent-

ly prosecuted without revivor. In disposing of this question the court, speaking through Judge Caldwell, said: "Death from wrongful act and existence of widow or next of kin are the two controlling facts; and they must co-exist in every instance. When either of them is lacking, no one of these statutory provisions is applicable. If the person wrongfully injured by another commences his suit for damages while living, he does so under the general law; and, if he dies from the injury sued for before judgment, leaving a widow or next of kin, his suit survives, and may proceed to judgment under the last-quoted provision of the statute (Code 1858, sec. 2293; Mill. & V. sec. 3133; Shannon's Code, sec. 4028) without revivor. But if either of the essential elements—death from wrongful act and existence of designated beneficiary—be wanting, that provision does not authorize the prosecution of a deceased plaintiff's suit without revivor; nor, indeed, does it authorize the revivor of such a suit."

The next case was *Freeman* v. *Railroad,* 107 Tenn., 340 (64 S. W., 1), decided at the April term, 1901. This was an action for damages for personal injury resulting in the immediate death of one B. T. Robertson. It was brought by the administrator for the benefit of the next of kin of the deceased, who were stated to be his mother, one brother, and sister. The declaration averred that the deceased left no widow or children or father surviving him, but left a mother,

brother, and sister.  The contention was made in the court below and in this court that the mother was the next of kin to the defendant, and that it was error to allow the plaintiff to show that deceased had a brother and sister, as they could have no interest in the recovery, and that the fact that there was a brother and sister induced the jury to give greater damages than they otherwise would have given.  Upon this subject the court, speaking through Judge Wilkes, said:  "We think that the conclusion is hardly warranted upon any reasonable hypothesis, and we can not see that the fact would have at all increased the amount of damages awarded, and such assumption is not well grounded.  The action in the case is based on the provisions of the statute (Shannon's Code, secs. 4025-4029).  These sections prescribe the persons for whose benefit the action may be brought, and, in substance, that the right of action vests primarily in the widow, next in the children, or in the personal representative for the benefit of the widow or next of kin.  It has been held that, if no widow or children survive, then the right of action belongs to the father, or to the personal representative for the use and benefit of the father or next of kin.  *Railroad* v. *Bean,* 94 Tenn., 395, 396 (29 S. W., 370).  The judge was of opinion these sections of the Code should be construed in connection with and in the light of the statutes relating to the distribution of estates.  Subsection 5 of section 4172 provides that in the distribution of per-

sonal estates, 'if there is no father, the property shall
go to the mother and brothers and sisters, or the chil-
dren of such brothers and sisters representing them,
equally, the mother taking an equal share with each
brother and sister.' We think this is the proper view
of the statutes. The recovery, when realized, becomes
personal property, and follows the usual course of
distribution of personalty. *Loague* v. *Railroad,* 91
Tenn.,461 (19 S. W., 430) ;*Railroad* v. *Bean,* 94 Tenn.,
388 (29 S. W., 370). The parties who are entitled to
take under the statutes of distribution are, in contem-
plation of the other statutes, the next of kin, and
there was no error in allowing evidence to show that
there was a brother and sister of the deceased, as
well as a mother. . . . It is said that the court
should have charged the jury that the mother and
brother and sister of the deceased were not entitled
to the wages of deceased as a matter of law, and that
they were not dependent upon him in a legal sense.
It is only necessary to say that no such claim was
made in the declaration, and damages were not sought
upon this ground. Evidence was introduced to show
the earning capacity of the deceased, and, without
any objection, it was shown that he supported his
mother, and the witnesses were cross-examined upon
this point, and no exceptions were made to the evi-
dence. The damages recoverable in such case are
those which the deceased would have been entitled to
had he survived, as well as those which the parties

suing would have been entitled to in their own right. It does not appear that anything more was allowed than would have been recoverable in right of the deceased, and the recovery is small compared to the injury done, and the reckless manner in which it was done. We think the general charge sufficiently instructed the jury that they could give no damages for the physical suffering, or mental anguish of the next of kin. It was not insisted that damages could be awarded for this, and there is no evidence that it was taken into consideration by the jury."

The next case was *Railway* v. *Bentz,* 108 Tenn., 670 (69 S. W., 317), decided at the April term, 1902. This action was brought by the widow of one Edward Bentz to recover damages for his death, alleged to have been caused by the negligence of the defendant company. An assignment of error was filed upon the following paragraph of the trial judge's charge: "You also look to the loss of the aid—I don't mean pecuniary aid, but the aid of advice and counsel— that the plaintiff, Mrs. Bentz, has sustained by virtue of his death, and also look to the loss of comfort and enjoyment of his society. Now, these are the elements of damages to be considered by the jury in determining what amount of damages to allow her, if you find in favor of the plaintiff." Reviewing this instruction, the court, speaking through the present chief justice, said: "We think this error is well assigned. In *R. R.* v. *Wyrick,* 99 Tenn., 509 (42 S. W.,

434), it was said that under chapter 186, p. 259, of the
Acts of 1883, which provided for a recovery of 'dam-
ages resulting to the parties for whose use and bene-
fit the right of action survived from the death con-
sequent upon the injuries received,' the widow could
only recover her pecuniary loss on the death of her
husband, and that case was reversed because the trial
judge had said to the jury upon the measure of dam-
ages 'that they could look to the mental and physical
suffering of the surviving widow.' The court then
quoted approvingly from the opinion of Judge Shars-
wood, in *Penn. R. R. Co.* v. *Butler,* 57 Pa., 335, in which
it is said that *solatium* for distress of mind is not a
proper element in fixing the amount of the survivor's
personal loss. In the present case the learned trial
judge—evidently by an inadvertence—excluded from
the jury all consideration of the widow's pecuniary
loss, and told them 'to look to the loss of comfort and
enjoyment' sustained by her from the negligent, fatal
injury (if such it was) to her husband." For this
error the judgment was reversed.

The foregoing are all the decisions of this court
upon the sections of the Code referred to, and upon
chapter 186 of the acts of 1883, which in any wise
throw light upon the measure of damages applicable
to this class of cases. We have introduced into the
inquiry some cases which, perhaps, have only a re-
mote bearing, and so, it may be, we have extended our
references beyond those which were really necessary

to elucidate the subject. Still we think even these authorities will be found useful in presenting a full and complete view of the law upon the subject as administered in this court.

Regarding these cases all together in one comprehensive view, from the earliest to the latest, a striking fact appears, viz.: that in all of them only one right of action is recognized—that of the deceased—and that they all, so far as they speak to the subject at all, deny that any independent right of action exists in the widow, the children, or the next of kin. In no case is the point more strongly stated than in one of the latest—*Whaley* v. *Catlett*. In that case it is said: "The statute provides alone for the continued existence and passing of the right of action of the deceased, and not for any new, independent, cause of action, in his widow, children, or next of kin. . . . It is alone by virtue of these statutes that a right of action exists in the widow, children, or next of kin at all for the unlawful killing of the deceased, and this right exists under the statute not because it arises directly to them in their own right, but because it passes to them in right of the deceased." 103 Tenn., 347 (53 S. W., 131). Again, in another late case occurs the following: "The right of action is still the right of the deceased, although the recovery may include as an element such damages as were sustained by the persons to whom the statute gives the

recovery." *Loague* v. *Railroad,* 91 Tenn., 458 (19 S. W., 430).

These and other authorities also recognize the fact that, although the action is a single one, two kinds or classes of damages are comprised in them. This point is aptly and briefly set forth by Judge McAlister, in a recent case as follows: "Under our act of 1883, damages for the mental and physical suffering, loss of time, etc., of the deceased, are also recoverable, and are superadded to the pecuniary damages sustained by the widow or next of kin." *Railroad* v. *Wyrick,* 99 Tenn., 500, 511 (42 S. W., 434).

It is thus apparent from the authorities that there are, under the sections of the Code referred to and the act of 1883, two classes of damages recoverable in the same action: First, damages purely for the injury to the deceased himself; second, the incidental damages suffered by his widow and children, or next of kin, from his death. In the first class are embraced damages for the mental and physical suffering, loss of time between the injury and death, and necessary expenses resulting to the deceased from the personal injuries. In the second class is embraced the pecuniary value of the life of the deceased (*Railroad* v. *Wyrick,* 99 Tenn., 500, 508, 511 (42 S. W., 434); *Collins* v. *Railroad,* 9 Heisk., 851; *Railroad* v. *Stevens,* Id., 12, 14, 15, 17, 18), to be determined upon a consideration of his expectancy of life, his age, condition of health and strength (*Railroad* v. *Spence,* 93 Tenn., 173, 188,

189, 23 S. W., 211, 42 Am. St. Rep., 907) ; *Railroad* v. *Stacker,* 86 Tenn., 343, 352, 353 (6 S. W., 737, 6 Am. St. Rep., 840), capacity for labor, and for earning money through skill in any art, trade, profession, occupation, or business (*Railway Company* v. *Howard,* 90 Tenn., 144 (19 S. W., 116) ; *Bridge Co.* v. *Barnes,* 98 Tenn., 601 (39 S. W., 714) ; *Railroad* v. *White,* 5 Lea, 540), and his personal habits as to sobriety and industry (*Railroad* v. *Prince,* 2 Heisk., 580) ; all modified, however, by the fact that the expectation of life is at most only a probability, based upon experience, and also by the fact that the earnings of the same individual are not always uniform (*Railroad* v. *Spence,* 93 Tenn., 173, 188, 189, 23 S. W., 211, 42 Am. St. Rep., 907). All of these elements are to be taken into consideration by the jury, and, after weighing them all, they should assess such amount of damages as may be sufficient to compensate for the loss of the life whose value they are attempting to estimate. In cases where there is contributory negligence they should make proper deductions for this, and in cases where the negligence of the person that inflicted the injury is gross or wanton they should make proper additions by way of adding punitive damages. *Railroad* v. *Stacker,* 86 Tenn., 343, 352 (6 S. W., 737, 6 Am. St. Rep., 840) ; *Railroad* v. *Wallace,* 90 Tenn., 54 (15 S. W., 921) ; *Railroad* v. *Fleming,* 14 Lea, 137; *Railroad* v. *Guinan,* 11 Lea, 98 (47 Am. Rep., 279). No rules more exact than

these can be formulated.   At last it is a matter de-
pendent most largely upon the judgment of the jury,
and their sound discretion, after carefully, honestly,
and fairly considering all of the various elements
that enter into the question.

In some of the cases referred to (notably the case
which first made the suggestion—*Collins* v. *Railroad*)
it is said that damages belonging to what has just
been denominated the "second class," are to be esti-
mated as if the deceased were himself still alive, but
totally disabled, and in that condition suing for such
injury.   In the same connection, however, it is said
that, if he were so alive, and so injured, he would be
unable to give his family that attention and care
which he could otherwise give to them, and that in
this manner they would also suffer as well as he.
But this is merely a method of showing how the in-
jury to the husband and father has resulted in an in-
cidental damage to the wife and children, or widow
and children, or next of kin; illustrating the princi-
ple above referred to that there is only one cause of
action, that of the person who was killed or injured,
and that this cause of action is always viewed by
the court as a single one.   Or it may be said that,
for convenience in estimating damages, and in order
to separate in the mind the damages for the deceased's
pain and suffering, mental and physical, his loss of
time, and necessary expenses attendant upon the in-
jury (those damages peculiarly personal to him),

from the incidental damages which the widow and children or next of kin are entitled to recover because of the incidental injury sustained by them, it is held that the latter damages are to be assessed as if the deceased were still alive, and totally disabled. For practical purposes, however, it is unnecessary that this supposition should be called to the attention of the jury, or considered by them as the starting point of the inquiry, or at any stage of it. It is sufficient that the pecuniary value of the life destroyed may be ascertained, as far as such a matter can be ascertained at all, in the manner and according to the rules already laid down. In two of the cases referred to above (*Collins* v. *Railroad,* 9 Heisk., 841; *Railroad* v. *Davis,* 104 Tenn., 442, 58 S. W., 296), the existence of children of the deceased was allowed to be proven, and in another (*Freeman* v. *Railroad,* 107 Tenn., 340, 64 S. W., 1), the existence of brothers and sisters; but not in either case, it seems, for the purpose of enhancing damages, but only for the purpose of showing the existence of beneficiaries provided for by the sections of the Code and the act of 1883—a matter always proper. *Daniel* v. *Coal Co.,* 105 Tenn., 470 (58 S. W., 859).

The foregoing, we think, truly presents the result of all of our cases when brought together in one general view.

It is insisted, however, in the brief filed for defendant in error, that the elements of damages which

we have assigned to what we have denominated the second class belong really to the first class; that is, should be considered in estimating the damages which accrued to the deceased personally, as distinguished from those that should be assessed for the injury sustained by the next of kin or widow and children. This contention is based upon certain language appearing in *Fowlkes* v. *Railroad Company*, 9 Heisk., 831-833; *Railroad* v. *Smith*, 9 Lea, 474; *Railroad* v. *Gurley*, 12 Lea, 53.

The language referred to in *Fowlkes* v. *Railroad* is that the action "is brought for the same cause as if the injured party himself had brought it." This is followed on the next page by the observation: "It is true that some of the cases [referring evidently to the Prince case, the Collins case, and the Stevens case] seems to have introduced a new element of damages in cases where the action is brought by the representative; that is, damages for the loss of the society, etc., of the husband, father, or relative, to the widow or next of kin; that in such cases damages might be allowed beyond what would be proper where the action is brought by the party himself. Some of these cases stand upon doubtful grounds; but even where the action is brought by the party himself, damages might, in a proper case, be given to the same extent as if death had ensued; *i. e.*, where the injury disables the party for life. In such a case the injury, in a pecuniary sense, would be the same as if death had ensued."

The language referred to in the Smith case is the following: "This is the statutory action given by section 2291 *et seq.* of the Code, and is the same action whether it be brought by the injured party in person or by his administrator after his death. *Fowlkes* v. *Railroad,* 9 Heisk., 829. Hence the damages to be recovered are those sustained by the injured party. The action is not for the wrongs to the husband or next of kin. The damages are such as the injured party could have recovered if, instead of being killed, she had been disabled for life; if not the same amount, at least for the same elements of damages."

The language referred to in *Railroad* v. *Gurley* is the following: "The damages which were recoverable in this action were such as the injured party himself could have recovered if, instead of being killed, he had been disabled for life; if not the same amount, at least the same elements of damages. *Railroad* v. *Smith,* 9 Lea, 470, 474. It was competent to show the ability of the deceased to labor, and his capacity for labor, as well as skill in his art, business, or profession, in order to show what he was capable of earning."

It must be admitted that these statements cover the same elements of damages which we have assigned to the second class of damages, supra, and more. They cover every element of damages that are recognized by the Prince case, the Stevens case, and the Collins case, as those authorities are now interpreted

and understood; because there can be no doubt that, if a person should be totally disabled by an injury, he could recover for mental and physical pain and suffering, loss of time, necessary expenses incurred by reason of the injury; and in estimating the value of the time lost by him, we should necessarily have to ascertain his probable expectancy of life, together with his capacity for labor and for earning money by his skill in any art, business, profession, or occupation.     It results, therefore, that the rule for the measure of damages laid down in these cases (of Fowlkes, of Smith, and of Gurley) cover all of the elements of damage that could arise out of the deceased's cause of action.

It is undeniable, however, that the earlier cases— the Prince case, the Stevens case, and the Collins case—were for a time understood as meaning more than this; that is, as warranting an independent right of action, and the recovery of independent damages, in behalf of the widow and children or next of kin. This is apparent from the remark of Judge McFarland in the Fowlkes case, 9 Heisk., 833, 834, that "some of the cases seem to have introduced a new element of damages in cases where the action is brought by the representative, that is, damages for the loss of the society, etc., of the husband, father or relative, to the widow or next of kin; that in such cases damages might be allowed beyond what would be proper where the action is brought by the party himself.     Some of

these cases stand upon doubtful grounds," etc.   The same view is again indicated by Judge McFarland in the Smith case.   He says (9 Lea, p. 474): "The charge is also erroneous in instructing the jury that in estimating damages they might take into consideration the loss of social relation of husband and wife, parent and child, etc., and the advice and protection of the deceased as wife and mother.   There are expressions in some of our opinions justifying this charge, to some extent at least.   But," etc.   The deliverance in the Gurley case was taken directly from the Smith case without reference to the earlier cases, but in a case in the volume immediately preceding (*Railroad* v. *Pounds,* 11 Lea, 127, 130, 131), the same construction of the older cases appears.   It was there said that the act of 1883 (which was in exact language of that portion of the Prince case stating the measure of damages) constituted "a new or additional cause of action" in favor of the widow and children or next of kin.   The same view of the older cases was entertained in *Railroad* v. *Toppins,* 10 Lea, 58, and *Railroad* v. *Conley,* 10 Lea, 531.

So, the indirect dissent in the Fowlkes case, and the cases depending on it, from the measure of damages established in the Prince case, and the cases based on it, was founded on the construction given to the latter cases, to the effect that they authorized the assessment of damages other than and in addition to such as arose out of the cause of action of the

deceased himself, such as the loss of society, the comfort, counsel, and moral aid and support of the lost husband, father, mother, son, or brother.

It is true that the opinions in the Prince case and in the Stevens case, by reason of the generality of the language in which they were expressed, were open to that construction. But the Collins case, construing the other two, seems, in the discussion appearing in the last two pages of the opinion, to place the damages to be recovered as specially applicable to the widow and children or next of kin entirely upon the deceased's right of action, working it out on the theory that, if the deceased had been wholly disabled by the injury for life, but still left alive, he would have been entitled to compensatory damages. "If," continues the opinion, "he had a wife and children, whom he had supported by his industry, to whom he was now unable to render any assistance on account of his injuries, this privation of himself and family would necessarily constitute an element in the computation of damages. And if his life is lost to them, why may not the privation to them of the aid and maintenance he had given them still enter into the computation of actual damages sustained by them? The widow has lost a husband, the child a father, and both have lost the food and raiment which his industry provided. Had he lived, he could have indemnified the last privation by his action against the wrongdoer; and, having died, the same right of in-

demnity passes to them." That is, the right of action which the widow and children or next of kin can enforce by suit after his death is his right of action, and the damages they claim grow out of that right of action, not an independent right of action in them.

This was the view taken of the meaning of the old cases and of the act of 1883, immediately after the passage of that act, or in the earliest cases that came up which were controlled by that act. This is manifest from the direction given for the assessment of damages in the Stacker case, supra, the Howard case and the Spence case; and from the ruling in the Loague case, the Johnson case, and the case of *Whaley* v. *Catlett,* that the cause of action under which the widow and children or next of kin claim, and under which they maintain their suit for damages, is the right of action of the deceased, and not any independent right in them.

It is insisted, however, in the briefs, that a different view is expressed in the Bamberger case and the Freeman case, supra.

The Bamberger case is not out of harmony with the other cases mentioned. In that case it was held that the one suit by the administrator covered every claim for damages that could be brought forward on account of the death of the deceased. It was implied in the opinion that the statute preserved to the father the right of action which he would have had against one who had deprived him of the services of his son,

past or prospective, without depriving the latter of life, and that this was embraced in the action brought by the administrator. Still, in strictness, this would not fall outside of the elements to be considered in assessing damages on the deceased's own right of action; that is to say, the matter spoken of as the father's right would fall within the elements spoken of as "loss of time" in fixing the damages recoverable for one killed who owed no service. There is, therefore, nothing in this case that in any wise impeaches the principle that the damages to be recovered are only those that arise out of the deceased's right of action.

Nor is the Freeman case out of harmony with the prevailing doctrine. Some point was made in the argument at the bar on the following sentence occurring in that opinion: "The damages recoverable in such cases are those which the deceased would have been entitled to had he survived, as well as those which the parties suing would have been entitled to in their own right." It was not intended by this to say that the widow and children or next of kin had the right to enforce any claim for damages that did not arise out of the deceased's own right of action, but merely, in a general way, to mark the difference between those damages which were purely personal to the deceased (his mental and physical suffering, loss of time, and expenses) and those occurring more immediately to the widow and children or next of

kin, arising out of the loss of the life of the deceased, and expressed by the pecuniary value of that life, to be ascertained in the manner already stated. Indeed, the entire substance and spirit of that opinion is to the effect that all of the damages recoverable belong to the estate of the deceased, and are distributable as the personal property thereof; and this excludes every idea of an independent right of action in the widow, children or next of kin.

But it is said by counsel for defendant in error that, if it be true the widow and children or next of kin have no right to recover except under the cause of action of the deceased, then there is no difference between the earlier and later cases, and there is no meaning in the expression used in several of the later opinions that the act of 1883 enlarged the right of the person suing so as to permit the recovery of damages peculiar to the widow and children, together with the damages which the deceased might have recovered for his own benefit, on account of his own suffering and loss.

With respect to this matter it is to be observed that the expression referred to occurs in only three of the cases: *Railroad* v. *Loague, Railroad* v. *Johnson,* and *Whaley* v. *Catlett.* In the first and third of these cases, the question before the court was as to when the statute of limitations would begin to run in cases of this character; and in the second case the question was as to the status, under the sections

of the Code and under the act of 1883, of a husband
suing for the death of his wife. What was said in
each of these cases covering the measure of damages
was with a view to determining the status of the
parties whose rights were under examination, as af-
fected by the particular questions proposed for solu-
tion. In neither of these cases did the court have in
mind, or attempt to determine with exactness, the
several rules controlling the assessment of damages
in cases of this character. The judges writing the
opinions used the language referred to in a large and
general sense, having in mind the construction which
had been given in the Fowlkes case, the Smith case
and the Trafford case, to the Prince case and the
cases based upon it, without stopping to make a crit-
ical examination of that construction.

But, however this may be, the expression above re-
ferred to and commented upon can not change the
fact that the principle runs through all of our cases,
from the time the question was first mooted until now,
that all of the damages recoverable in this class of
cases are based upon and arise out of the cause of ac-
tion of the deceased, and not out of any independent
cause of action belonging to the widow, children or
next of kin. We have pointed out that this principle
was obscured and rendered open to misconception in
the Prince case and the Stevens case by reason of the
generality of the language used in the opinions in
those cases, but that it clearly appeared in the Col-

lins case, which referred to, construed, and applied the two former cases. It appeared with even greater clearness in the series of cases immediately following the Collins case, and in the very recent cases which we have already referred to, it is announced with unmistakable distinctness. It binds together in one harmonious series all of our decisions upon the subject of the measure of damages in cases of personal injuries resulting in death since the Burke case; so that, in the light of it, we see that, whatever conflict or contrariety of opinion may appear in their several holdings, these are only superficial, not fundamental.

In the Burke case a distinction was taken between damages for the mere act of killing and damages for pain and suffering and loss of time. It was held that the former were not allowable, but that the latter were, yet could not, in the nature of things, be allowed, when it appeared, as in that case, that the death was instantaneous, because it was said there could be neither pain nor suffering nor loss of time. It is manifest from a critical examination and comparison of this case and the Prince case that the point of conflict was as to whether there could be allowed damages for the mere act of killing; the Burke case holding that such damages could not be allowed, and the Prince case, that they could be allowed.

When the Prince case is read from this point of view, it is apparent that when the following language

was used, viz., "that the representative of a person who had died from personal injuries should have the right to recover not only for the mental and bodily suffering, loss of time, and necessary expenses resulting immediately to the deceased from the personal injuries," the chief justice was referring to that class of damages which was sanctioned by the Burke case; and when he added the following words, viz., "but also for the damages resulting to the parties for whose benefit the right of action survives from the death consequent upon the injuries," he was referring to damages arising from the mere act of killing—the class of damages which were denied in the Burke case; and it was upon this point the Burke case was overruled.

At first blush, it seems a solecism to speak of a man having a right of action for his own death. We can readily undertsand how he can have an action for mental and bodily suffering, and for loss of time, and for expenses incurred, all of these happening in his lifetime, and caused by the injury complained of. But when he dies, that is the end of him, personally, in this sphere of being; and the loss occasioned by the mere act of death itself can not, in any strictly logical sense, be said to be his loss, but rather the loss of those who come after him, and who were interested in his continuance in life. Yet it can not be doubted that the legislature could endow his estate with such a right of action, and vest the right to sue thereon

in his administrator for the benefit of his widow, children or next of kin, and that this was the thing in fact done was held by this court in the Prince case, 2 Heisk., 585, 586. In the Fowlkes case, 9 Heisk., 831, it was held that the right of action was based not on the death, but rather on the injury that produced the death; but the difference is not material, except in view of the statute of limitations as to when the statute would begin to run. In this latter case it was said that in truth there was no such thing as instantaneous death, that there must always be an appreciable interval between the impact of the force producing the injury, and the dissolution of the person receiving the injury, and that during that interval, the right of action would vest, and afterwards, by operation of law, devolve upon the administrator. We repeat that the distinction is important only in view of the statute of limitations. It is to be noted that the Fowlkes case and the Prince case agree in deriving the right of action from the deceased, and that neither of them gives any warrant for the theory that there was any independent right of action in the widow, children or next of kin.

The case next following the Fowlkes case was the Trafford case. This case spoke to the subject of the measure of damages, but only in general terms. Then came the case of *Railroad* v. *Smith,* 9 Lea, 470, which laid down as the rule for measuring damages that they were "such as the injured party could have re-

covered if, instead of being killed, she (or he) had been disabled for life, if not for the same amount, at least for the same element, of damages." It has already been shown, supra, that this rule embraces every element of damages allowed in the Prince case. We shall add here only the observation that the clause "if not for the same amount" was intended to indicate that the damages would probably be greater when the mental and physical suffering continued through years of total disablement—a death in life— than in case of a death preceded by a less protracted period of suffering. So it is meant that while, in an action to recover damages for the death alone, the elements composing the measure of damages would be the same as if the man had not died, but was still alive, totally disabled, and bringing the suit in that condition, yet in the latter case the damages recoverable would probably be greater, owing to the greater suffering, mental and physical.

The other cases subsequent to *Railroad* v. *Smith,* 9 Lea, 470, adopted the same form of expression in enunciating the rule of damages down to *Railroad* v. *Stacker,* 86 Tenn., 343 (6 S. W., 737; 6 Am. St. Rep., 840); all of them being in line with *Fowlkes* v. *Railroad,* and following its lead.

The implied dissent in the Fowlkes case, and the cases depending on it, from the Prince case, and the cases depending on it, was based upon what is now known to have been an improper construction of those

Davidson Benedict Co. v. Severson.

cases; that is, that they allowed damages for the loss of moral aid, comfort, counsel, etc., the class of damages that goes under the name of *solatium*. There never was any dissent from what is now recognized as the true meaning of those cases, and it is a notable fact that in none of the cases is anything said indicating a purpose to overrule the Prince case, or any of the cases depending on it; but always in guarded language it is said merely that there are "expressions" in some of the former opinions that would justify or seem to justify, the several charges of the circuit judges under examination, and it was only so far as those opinions were justly subject to that construction that they were criticised. It seems from the charges of the circuit judges, as preserved and reproduced in the opinions of the court, that the construction at the bar and by the circuit judges of the Prince case and the cases in that series was that they allowed the *solatium*, and they—the circuit judges, or some of them—seem to have construed the act of 1883 as restoring that form of measuring damages, and this course of construction on their part is by no means surprising, in view of the language used by Judge McFarland in the Fowlkes case; but, as we have seen, such was not the true construction of the Prince case and its congeners, and it could not be the true construction of the act of 1883, because that is in the very language of the Prince case.

So, the Fowlkes case and its associate cases did not

antagonize the Prince case and its associate cases, but only the erroneous construction placed upon them, or rather those cases erroneously construed.

But, however this may be, the rule is now by a line of decisions fully settled; and the measure of damages in all of the cases since the Burke case is the same, although the forms of expression may differ; and this measure is no other than that which is contained in the act of 1883, and it is the same which we have spoken of, supra, as divided into two classes. This rule which we have above formulated is nothing more than a compendium of all the prior deliverances of the court upon the subject, exclusive of the Burke case. Moreover, this rule for the adjustment and determination of the amount of damages in any given case belonging to the class of cases we have before us seems wholly fair and just. By means of it, the widow and children are enabled to recover judgment for an amount of damages which fully compensates (as fully as it is possible to introduce certainty into such an inquiry) the injury done to the deceased in his own peculiar and personal relation, and, in addition, for a sum that will compensate (as far as such a matter can be rendered certain) the widow and children or next of kin for the pecuniary loss they have sustained by the death of the deceased; and at the same time the wrongdoer is thus made to respond in damages for the whole injury done, so far as money can compensate such an injury.

Another effect of the principle under which the rule is formulated is that the right of recovery is fitted into our general system of law, and we are enabled to clearly understand how the recovery falls under and is to be disposed of according to our statute of distributions, as other personal estate of the deceased; the only difference being that it is not liable to the claims of creditors.

The logical consequence of this legal status of the recovery, taken in connection with the rule for the measure of damages as formulated, is that there need be no testimony introduced for the purpose of showing that the widow, children or next of kin were dependent for support or pecuniary aid upon the deceased in his lifetime. It is sufficient, so far as this phase of the matter goes, to prove the status of widow, child or next of kin at the date of the death of the deceased from the wrongful act.

Further, upon the inherent justice and fairness of the rule for the measure of damages laid down, we desire to add that, after we pass the point that nothing can be allowed as *solatium,* that is, for the loss of the moral aid, comfort, counsel and companionship of the deceased, which was determined in several of the cases cited, supra, and which seems to be involved in the legal fact that the recovery ranks as personal estate of the deceased, distributable under the statute of distributions, and after we reach the point that the damages for the loss peculiar to the widow

and children or next of kin are to be assessed upon the basis of the pecuniary loss sustained by the destruction of the life in question, which is held in substantially all of the cases that refer to the subject, it would seem that when the whole pecuniary value of that life, as far as such value can be ascertained by legal processes, is allowed in recovery for indemnification, all is done that can be done by law in the way of granting reparation for a wrong done, especially when to this is added a sum to compensate the estate of the deceased for mental and physical pain and suffering endured by the deceased, and loss of time and necessary expenses incident to the injury done, which sum so ascertained is added in the recovery of the said widow, children or next of kin.

With these principles before us, we shall now determine whether the charge given by his honor, the circuit judge, was correct. The charge upon the measure of damages was as follows:

"You will assess the damages at such amount, not exceeding twenty thousand dollars, as will be compensation for the injuries received.

"In the assessment of damages the statute provides as follows: 'Where the person's death is caused by the wrongful act, fault or omission of another, and suit is brought for damages, the party suing shall, if entitled to damages, have the right of recovery for mental and physical suffering, loss of time, and necessary expenses resulting to the deceased from the per-

sonal injuries, and also the damages resulting to the parties for whose use and benefit the right of action survives, from the death consequent upon the injuries received.'

"There are two classes of damages provided for in the statute: First. Such damages as the deceased himself could have recovered had he been permanently disabled for life and he himself were prosecuting the suit. In estimating this class of damages, you will take into consideration the mental and physical suffering of the deceased, his earning capacity and the probability of his continuance of life. Inasmuch as it is in proof and undisputed that the death of Hollister occurred in less than one hour after the accident, the loss of time is not a material consideration, and no proof has been introduced as to the necessary expenses resulting to the deceased from the personal injuries.

"Second. In addition to such damages, the plaintiff would be entitled to recover also such pecuniary damages as have been sustained by the widow and child consequent upon the death of Hollister. In estimating such damages, you will look to the ability of Hollister to furnish his wife and child a support and maintenance, the nature and extent of the support he did give them, and to the probability of the continuance of that support, and his ability to provide, and to the probability of a continuance of their dependence upon him for support and maintenance.

"But the plaintiff would not be entitled to recover any damages for the mental and physical suffering and grief of the widow and child, nor the loss of the society and affection of the husband and father, but, as before stated, only such pecuniary damages as were sustained by the wife and child consequent upon the injury.

"With these instructions to govern you, you would fix the amount of the damages at such an amount, not exceeding twenty thousand dollars, as will be compensation for the injuries received."

We think the charge was erroneous, as will be clearly seen upon comparing it with the rule which we have above laid down. The error consists in the instruction as given to the jury in the paragraph beginning with the word "second." In that paragraph the jury are, in effect, told to duplicate that portion of the damages which had already been provided for in the direction that they were to assess "such damages as the deceased himself could have recovered had he been permanently disabled for life, and he himself were prosecuting the suit," and that they were to take into consideration "his earning capacity, and the probability of his continuance in life;" in other words, his life expectancy. These directions substantially covered the damages which the jury were told to allow again in the paragraph referred to in the language, "the plaintiff would be entitled to recover also such pecuniary damages as have been sus-

tained by the widow and child, consequent upon the death of Hollister." The "pecuniary damages" or loss of the widow and children or next of kin are the pecuniary value of the life of the deceased as shown by his expectancy of life and his earning capacity. As we have already shown, likewise, the expression in the charge taken from some of our decisions that the damages were to be "such as the deceased himself could have recovered had he been permanently disabled for life, and he himself were prosecuting the suit," is merely another form of saying the same thing, viz., that the damages would be measured by the value of his life, which in turn would be measured by the life expectancy and earning capacity. Again, when the jury were told in the said paragraph that in estimating such damages, that is, the "pecuniary damages" sustained by the widow and child, consequent upon the death of the husband and father, Hollister, they were to "look to the ability of Hollister to furnish his wife and child a support," and "his ability to provide," they were, in another form, told to again value his earning capactiy; and when they were told to "look to the probability of the continuance of that support" they were again instructed to look to the life expectancy of Hollister and to value it a second time.

It was insisted in argument at the bar that the right to duplicate damages had been recognized and approved by this court in the case of *Railroad* v.

*Wyrick,* 99 Tenn., 500 (42 S. W., 434). The expression referred to does appear in that opinion, wherein the judge who delivered the opinion of the court in that case spoke of "the rule for the assessment of duplicate damages laid down in the Prince case." But in the three paragraphs that immediately follow that one in which the expression referred to occurs, the meaning that it bore in the mind of the writer of the opinion is shown. It was shown by a quotation made from the Stevens case that the doctrine of the Prince case was that the statute embraced, in addition to the damages for the suffering of the deceased, his loss of time, etc., "also the pecuniary loss his death caused to his widow and children or next of kin," and that in this latter respect the subject-matter of damages is similar to the statutes of New York and Pennsylvania, and that they were confined to pecuniary damages; and in the next paragraph it was shown by a quotation from *Penn. R. R. Co. v. Butler,* 57 Pa., 335-338, that by "pecuniary loss" to the widow and children—or, rather, children in that case—was meant "what the deceased would probably have earned by his intellectual or bodily labor in his business or profession during the residue of his lifetime, and which would have gone for the benefit of his children, taking into consideration his age, ability, and disposition to labor, and his habits of living and expenditures."

Then continues Judge McAlister, after making the

Davidson Benedict Co. v. Severson.

quotation from Judge Sharswood's opinion: "It will be observed that Judge Sharswood is dealing with the damages resulting to the widow or next of kin, but, under our act of 1883, damages for the mental and physical suffering, loss of time, etc., of the deceased are also recoverable, and are superadded to the pecuniary damages sustained by the widow or next of kin." It is observed that here is meant, not double damages, but merely the division of the whole damages allowable into two parts or classes in the manner which we have already set forth in a former portion of the opinion.

As the judgment must be reversed for the error indicated, it is unnecessary that we should pass upon the other errors assigned.

A judgment will be entered here reversing the judgment of the court below, and remanding the cause for a new trial.